THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T.S., individually on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BODY CONTOUR CENTERS, LLC d/b/a SONO BELLO, a Delaware limited liability company,<br><br>Defendant. | No. 2:24-cv-01944-LK<br><br>**DEFENDANT BODY CONTOUR CENTERS, LLC D/B/A SONO BELLO'S MOTION TO DISMISS UNDER RULE 12(B)(6)**<br><br>NOTE ON MOTION CALENDAR: FEBUARY 28, 2025<br><br>ORAL ARGUMENT REQUESTED |



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. LAW AND ARGUMENT ..... 4

A. Legal Standard ..... 4

B. Plaintiff Fails to State a Claim for Violation of The Electronic Communications Privacy Act (Count I) ..... 4

C. Plaintiff Has Failed to State a CIPA Claim (Count II) ..... 10

1. Plaintiff cannot assert a predicate violation of Clause One because it does not apply to internet connections ..... 11

2. Plaintiff fails to plead facts showing whether or what "content information" was disclosed to Meta ..... 11

3. The Pixel does not intercept communications "in transit" ..... 12

4. Plaintiff fails to plead facts showing Meta actually used or attempted to use contents of Plaintiff's communications ..... 13

D. Plaintiff Has Failed to State a CMIA Claim (Count III) ..... 14

IV. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Novant Health, Inc.*,
No. 1:22-cv-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .......... 6

*Am. Hosp. Ass'n, et al. v. Xavier Becerra, et al.*,
No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024).......... 1, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 9

*B.K. v. Eisenhower Med. Ctr.*,
No. 23-2092, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024).......... 5, 7, 10, 16

*Beckington v. Am. Airlines, Inc.*,
926 F.3d 595 (9th Cir. 2019).......... 4, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011).......... 9

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010).......... 6

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 8

*Cody v. Ring LLC*,
718 F.Supp.3d 993 (N.D. Cal. 2024) .......... 10, 11, 13

*D'Angelo v. Penny OpCo, LLC*,
No. 23-cv-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 11, 13

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019).......... 4

*Doe v. MKS Instruments, Inc.*,
No. SACV23-00868-CJC (KESx), 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) .......... 16, 17

*Esparza v. UAG Escondido A1 Inc.*,
No. 23-cv-0102-DMS (KSC), 2024 WL 559241 (S.D. Cal Feb. 12, 2024) .......... 11



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) .................... 4, 9, 12

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .................... 5, 7, 10

*George Williams, et al. v. TMC Health*,
No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) .................... 7

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .................... 13

*In re Google Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3rd Cir. 2015) .................... 5, 6, 7, 10

*Jane Doe, et al. v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 25226869 (C.D. Cal. June 5, 2024).................... 5, 17, 18

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) .................... 7

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012).................... 8

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) .................... 16, 17

*Kurowski, et al. v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .................... 5, 6, 17

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023).................... 11

*M.G. v. Therapymatch, Inc.*,
No. 3:23-cv-04422-AMO,2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .................... 16

*Martin v. Sephora USA, Inc.*,
No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023).................... 13

*Mikulsky v. Bloomingdale's, LLC*,
No. 3:23-CV-00425-L-VET, 2024 WL 337180 (S.D. Cal. Jan. 25, 2024).................... 12

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016).................... 5, 7, 10

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-cv-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2023) .................... 5, 6, 9, 16

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000)....................8

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. 2023)....................6

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)....................9, 12, 13, 15

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....................9, 15

*In re Toys R Us, Inc., Privacy Litig.*,
No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)....................8

*Wilson v. Rater8, LLC*,
No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)....................17

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................9, 12

**State Cases**

*Eisenhower Med. Ctr. v. Sup. Ct.*,
226 Cal. App. 4th 430 (2014)....................17

*Gibson v. Stanford Health Care*,
No. 23CV413522 (Cal. Super. Ct. Sept. 18, 2024)....................15

*Maxwell v. The Regents of the Univ. of Cal.*,
No. 34-2023-00336792-CU-BT-GDS (Cal. Super. Ct. Jan. 19, 2024)....................18

*Sutter Health v. Sup. Ct.*,
227 Cal. App. 4th 1546 (2014)....................14, 18

*Vigil v. Muir Med. Grp. IPA, Inc.*,
84 Cal. App. 5th 197 (2022)....................17

**Federal Statutes**

18 U.S.C. § 2510(8)....................8

18 U.S.C. § 2520 *et seq*....................7, 8

Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq*....................*passim*

Health Insurance Portability and Accountability Act....................1, 7



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

**State Statutes**

California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56 *et seq*. ........ *passim*

California Invasion of Privacy Act, Cal. Penal Code § 630 *et seq*. ........ 4

California Invasion of Privacy Act, Cal. Penal Code § 631 *et seq*. ........ *passim*

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)........ 1, 4



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

## I. INTRODUCTION

Defendant Body Contour Centers, LLC d/b/a Sono Bello ("Sono Bello") respectfully moves this Court for an order dismissing Plaintiff's Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Plaintiff T.S.'s Complaint is among numerous putative class action complaints that have been filed against healthcare providers nationwide regarding the ubiquitous practice of using third-party analytics technologies on their websites. Plaintiff claims that Sono Bello violated her privacy rights by allegedly installing a commonly used web-browsing analytics technology called the Meta Pixel on its public-facing website ("Website"), accessible to anyone in the public (not just patients).

The above-captioned action was filed following the United States Department of Health and Human Services' ("HHS") issuance of a bulletin (the "Guidance"), which Plaintiff claims instructed that "regulated entities [Sono Bello]" "are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules." Compl. ¶ 21. The Guidance provided, *inter alia*, that the "Proscribed Combination" of (1) an individual's IP address with (2) a visit to an unauthenticated public website addressing specific health conditions or healthcare providers (like Sono Bello's Website) constituted protected health information ("PHI"), the disclosure of which would violate the Health Insurance Portability and Accountability Act ("HIPAA").

What Plaintiff fails to mention, however, is that the underpinning for the Guidance (and Plaintiff's claims)—***the Proscribed Combination—has now been declared unlawful and vacated.*** *Am. Hosp. Ass'n, et al. v. Xavier Becerra, et al.*, No. 4:23-cv-01110-P, 2024 WL 3075865, at *17 (N.D. Tex. June 20, 2024) ("*AHA* Decision") (finding that the Proscribed Combination was promulgated "*in clear excess* of HHS's authority under HIPAA") (emphasis added).

Setting aside the Complaint's factually unsupported and conclusory allegations that Plaintiff's PHI has been disclosed to third parties, the cornerstone of the Complaint is revealed to be, at best, nothing more than the Proscribed Combination, which is wholly insufficient to support Plaintiff's claims. Plaintiff alleges that by integrating Meta Pixel on its Website, Sono Bello caused


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Plaintiff's sensitive and private medical information to be transmitted to third parties in violation of her privacy rights. But rather than allege facts substantiating Plaintiff's claim that private medical information was *actually* disclosed to third parties, the Complaint assumes a hypothetical "patient" who visits the Website and whose "private information" is purportedly disclosed to third parties. As a threshold matter, this false assumption presupposes that every visitor to the Website is indeed a patient rather than an individual who looks up a doctor friend on the Doctor page of the Website, an individual who wants to learn more about a particular medical treatment and looks it up on the Procedures page of the Website, an individual researching doctors for a family member or friend, or even an individual looking for location or contact information. *See* DOCTORS, https://www.sonobello.com/about-us/doctors/ (last accessed Jan. 31, 2025); PROCEDURES, https://www.sonobello.com/procedures/ (last accessed Jan. 31, 2025).

In fact, Plaintiff herself does not even allege facts showing that she was ever a patient at Sono Bello, and her putative class definition is not limited to patients but rather "persons" who "book[ed]" a "consultation" through Sono Bello's Website. Compl. ¶¶ 8-9, 65. Plaintiff otherwise provides no supporting factual basis for her conclusory assertions that any of Plaintiff's medical information, or that any portion of any private communications between Plaintiff and her doctor(s), has been disclosed—which dooms each of Plaintiff's claims.

Plaintiff notably does *not* allege facts showing that this technology was installed in a secure patient portal. Plaintiff only alleges facts showing that her alleged browsing activity on the public website was transmitted to Meta.

For the reasons set forth herein, Plaintiff has failed to adequately allege facts sufficient to state any of her claims, and Sono Bello respectfully requests that the Court grant the Motion and dismiss Plaintiff's Complaint.

## II. STATEMENT OF FACTS

Sono Bello is a healthcare company that offers various medical treatments. Compl. ¶ 2. Plaintiff generally alleges that software implemented on Sono Bello's Website permits certain information to be transmitted from a user's web browser to third parties like Meta through the Meta


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Pixel. *See e.g.*, *id*. ¶¶ 9, 39, 40, 42-49, 87, 88, 95, 103, 106, 115, 119. Plaintiff does not allege Sono Bello implemented the Meta Pixel or any other similar technology on any secure patient portal. S*ee generally* Compl.

Plaintiff claims that Sono Bello "intercepted" or assisted Meta with "intercepting" Plaintiff's communications, resulting in disclosure of their "sensitive and confidential communications", "sensitive and confidential PII", and "sensitive and confidential PHI" to Meta. *See, e.g.*, *id.* ¶¶ 5, 9, 13, 31, 44, 55, 106. But this conclusory allegation is belied by the Complaint's heavy focus on theoretical online browsing activities on the Website. Speculating about a hypothetical "individual" who visits the Website, Plaintiff alleges that (1) when that "individual" visits the Website and selects the "Schedule Free Consultation" or "Book Online" button, the Meta Pixel "secret[ly] instruct[s] [the hypothetical individual's] browser … to secretly duplicate the communication with [Sono Bello], transmitting it to Facebook's servers, alongside additional information that transcribed the communication's content and the individual's identity" (*id.* ¶ 39); (2) "when a patient entered the Website and requested a consultation, [Sono Bello] transmitted information relating to the specific patient's consultation to Facebook via the Facebook Tracking Pixel" (*id.* ¶ 43) "including their Facebook ID." (*id.* ¶ 44). Plaintiff does not explain how this "information" comprises medical information, *i.e*., medical history, mental or physical condition, or treatment. S*ee generally* Compl.

Instead, Plaintiff freely uses the word "communications" throughout the Complaint, giving the false impression that actual patient-doctor communications could theoretically be shared with Meta. *See, e.g.*, *id*. ¶¶ 5, 9, 38, 39, 64, 103, 107. However, Plaintiff does not allege any facts showing that the contents of any of *her* patient-doctor communications have ever been disclosed to Meta.

Plaintiff alleges she used the Website "to book a consultation for a surgical weight loss procedure." *Id.* ¶ 9. She alleges she "received targeted advertisements from Facebook marketing for weight loss procedures." *Id.* As noted, Plaintiff herself does not even allege facts showing that she was ever a patient at Sono Bello. *Id*. ¶¶ 8-9 (alleging she booked a consultation at Sono Bello).

Plaintiff asserts three (3) causes of action on behalf of herself and a putative class of all

persons in the United States who, during the class period, maintained a Facebook account and accessed the Website to book a consultation, and a California subclass who, during the class period, maintained a Facebook and accessed the Website to book a consultation (*id.* ¶¶ 65-66) for (1) violation of the Electronic Communications Privacy Act, (18 U.S.C. § 2511(1)) ("ECPA"); (2) violation of the California Invasion of Privacy Act (Cal. Penal Code §§ 630 *et seq.*); and (3) violation of the California Confidentiality of Medical Information Act (Cal. Civ. Code §§ 56 *et seq.*).

## III. <u>LAW AND ARGUMENT</u>

### A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal if a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009)). Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate when the complaint lacks a "cognizable legal theory" or sufficient factual allegations to "support a cognizable legal theory." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652-53 (9th Cir. 2019).

### B. <u>Plaintiff Fails to State a Claim for Violation of The Electronic Communications Privacy Act (Count I)</u>

A claim under the ECPA "requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted). Plaintiff cannot satisfy at least the second, third, or fourth elements, and the ECPA claim should be dismissed as a matter of law, without leave to amend.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

### *1. Plaintiff Fails to Allege Any Unlawful Interception*

Plaintiff cannot establish that any communication has been unlawfully "intercepted" by Sono Bello. The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d)) (The ECPA does not make it unlawful for someone to "intercept ... electronic communication where such person is a party to the communication."); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (discussing "one-party consent language in the Wiretap Act"). Stated differently, a party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. 18 U.S.C. § 2511(2)(d)); *Id.* at 275 (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by Viacom, who was itself a party to all such communications."); *see also In re Google Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 142–43 (3rd Cir. 2015) (dismissing ECPA claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (dismissing ECPA claim on same grounds); *Jane Doe, et al. v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 25226869, at *10-11 (C.D. Cal. June 5, 2024) ("*Amgen*") (same).

The *Nienaber*, *B.K.*, and *Kurowski* decisions make clear that users of a health care provider's website cannot state a claim under the ECPA because the health care provider was the intended recipient of any communications occurring via the website and therefore could not have intercepted that communication. *See Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2023) ("Under the ECPA, it is not unlawful for a person to intercept electronic communications where such person is a party to the communication, as Defendant is here.") (internal citation and quotations omitted); *B.K. v. Eisenhower Med. Ctr.*, No. 23-2092, 2024 WL 878100, at *5 (C.D. Cal. Feb. 29, 2024) ("the party exception to Plaintiffs' ECPA . . . claim[] exempts Defendants from liability"); *Kurowski, et al. v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) ("*Rush I*") ("The Court concludes that Rush [(the healthcare provider)]—and not Facebook, Google, or Bidtellect—was the intended



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

recipient of the allegedly intercepted communications here. Rush is therefore a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred."); *see also Allen v. Novant Health, Inc.*, No. 1:22-cv-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (same ruling); *Pena v. GameStop, Inc.*, 670 F.Supp. 3d 1112, 1117-18 (S.D. Cal. 2023) (same ruling). Sono Bello is identically situated.

While there is a statutory exception under the ECPA where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State" (18 U.S.C. § 2511(2)(d)), this exception does not apply to the alleged interception itself; instead, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145 (emphasis in original, quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)).

Plaintiff's ECPA claim against Sono Bello is tethered to the alleged transmission of browsing activities on the Sono Bello public website and not any other independent tortious or criminal act. *See, e.g.*, Compl. ¶ 86 (alleging Sono Bello "intercepted" alleged communications "[b]y utilizing and embedding the Facebook Tracking Pixel on its Website"). Although Plaintiff contends that her ECPA claim should survive under Section 2511(2)(d) (*id.* ¶ 92), the Western District of Washington flatly rejected such a theory in a near identical matter. *Nienaber*, 2024 WL 2133709, at *15 (dismissing ECPA claim and finding the exception did not apply because plaintiff failed to plead "a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission."); *see also Rush I*, 659 F. Supp. 3d at 938 ("The 'exception' to the party exception for criminal or tortious intent does not apply."). This Court should do the same, especially since Plaintiff does not plead facts showing any tortious or criminal *use* of the alleged intercepted communications. *Id.*; *see also In re Google Cookie Placement*, 806 F.3d at 145 ("As the plaintiffs plead no tortious or criminal *use* of the acquired internet histories, § 2511(d) is not inapplicable on the basis of the criminal-tortious purpose exception.") (emphasis in



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

original); *B.K.*, 2024 WL 878100, at *5 (although the plaintiffs alleged the defendant "engaged in the allegedly illegal interception of their . . . information" for commercial advantage, plaintiffs failed to allege that purpose "constitute[d] independently illegal or actionable conduct" and the court concluded the "criminal or tortious act" exception to the party exception did not apply); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 945 (N.D. Cal. 2023) (dismissing wiretapping claim and collecting cases holding that a defendant's desire to "make money" through use of pixels does not meet the crime-tort exception); *George Williams, et al. v. TMC Health*, No. CV-23-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) (dismissing ECPA claim because plaintiffs failed to allege a criminal or tortious purpose.").[1]

Both the case law and Plaintiff's allegations establish that Sono Bello was a party to (and intended recipient of) her alleged communications. Plaintiff therefore cannot establish the second element of her ECPA claim – an unlawful interception of a communication. The claim therefore should be dismissed as a matter of law and with prejudice, as further amendment would be futile. *In re Nickelodeon*, 827 F.3d at 275; *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 142-43; *In re Facebook Priv. Litig.*, 791 F. Supp. 2d at 713.

### *2. There Can Be No Civil Liability for Allegedly "Procur[ing]" or Aiding and Abetting an Alleged Interception Through the Pixel*

Plaintiff's ECPA claim further fails as a matter of law because it is dependent on allegations that Sono Bello "procured" an alleged interception by Meta through the use of the Pixel. *See, e.g.*, Compl. ¶ 86. Indeed, all of Plaintiff's underlying allegations identify Meta – not Sono Bello – as the party that allegedly intercepted Plaintiff's communications through its source code on the Sono Bello public Website. *Id.* ¶ 39. These allegations *independently warrant* dismissal of Plaintiff's ECPA claim.

The ECPA's private right of action is found in 18 U.S.C. § 2520, which creates a scope of civil liability that is narrower than the criminal liability provision codified in Section 2511. Section

[1] To the extent that Plaintiff might have attempted to predicate an allegation of criminal or tortious conduct based on any HIPAA violation as set forth in the Guidance, this avenue has been foreclosed by the vacatur of the Proscribed Combination. *See AHA* Decision.

2520(a)'s plain, unambiguous language creates a private civil cause of action only against the person who engages in an unlawful interception, disclosure, or intentional use of wire, oral or electronic communication – not against any other person for procuring, enabling, aiding or abetting another's interception of such. *See, e.g., Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2012) (holding that there is no civil ECPA claim for "procuring" or "aiding and abetting" an interception); *see also Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same).

When Congress enacted the ECPA in 1986, it specifically excluded civil liability for procurement (or aiding and abetting), which previously existed under the 1968 predecessor to the ECPA. *See Kirch*, 702 F.3d at 1246-47 (addressing the statutory distinctions between civil and criminal liability under the ECPA).

Courts within the Ninth Circuit are in accord. *In re Toys R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001) ("The Court finds that § 2520(a) does not provide a cause of action against aiders and abetters, and, accordingly, that plaintiffs may not proceed against Toys R Us on such theory."); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) (explaining "there is simply no secondary liability (such as aiding and abetting) under the ECPA.").

Because the ECPA does not provide a private cause of action against an entity that is alleged to have procured or aided and abetted another party to intercept a communication, Plaintiff's ECPA claim should be dismissed as a matter of law.

### *3. Plaintiff Fails to Allege any Plausible Interception of "Contents"*

Plaintiff's ECPA claim further fails because Plaintiff has not pled facts showing that the "contents" of any communications were disclosed to Meta or any other third party. Under the ECPA, "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "Content" information "refers to the intended message conveyed by the communication" and is therefore distinct from "record" information, which relates to "the characteristics of the message that is generated in the course of the communication," such as a name, address, or the identity of a subscriber or customer. *See In re*

*Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014).

In *Nienaber*, the Western District of Washington made clear when dismissing the plaintiff's complaint, "the disclosure of browsing activity on a publicly available website that does not relate to 'to the past, present or future physical or mental health or condition of an individual is not actionable." *Nienaber*, 2024 WL 2133709, at * 5 (internal quotations omitted); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) ("*Smith II*"); ("the connection between a person's browsing history [on a public hospital website] and his or her own state of health is too tenuous."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) ("*Smith I*") (same).

In *Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930–31 (N.D. Cal. 2015), the court held that a URL sent to Meta by a user's browser does not qualify as "contents" of a "communication" under the ECPA because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication.'" *Id.* at 935 (quoting *In re Zynga*, 750 F.3d at 1106–07). The court emphasized that "[p]laintiff may never be able to state [an ECPA] claim, particularly since their arguments on this issue are so unpersuasive." *Id.* By definition, a URL does not convey the "meaning" of the communication with the host server; it simply identifies the location of the requested webpage on the Internet. In *In re Zynga,* the Ninth Circuit explained that even though a URL could disclose that a person viewed the "page of a gay support group," such URLs "function[] like an 'address,'" not "contents" of a communication. 750 F.3d at 1107.

Here, Plaintiff's Complaint fails to allege any facts showing that the substantive contents of her (or anyone's) alleged communications have ever been transmitted to Meta or any other third party. Plaintiff's conclusion that patients' "sensitive and confidential communications," "sensitive and confidential PII," and "confidential PHI" are transmitted to Meta, which is unsupported by factual allegations (*see, e.g.*, Compl. ¶¶ 9, 13, 31, 44, 55, 106), is insufficient as a matter of law. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (mere conclusions are insufficient); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (rejecting allegations that the defendant "regularly and unlawfully shared highly confidential information" related to customers as conclusory in nature);

*B.K.*, 2024 WL 878100, at *5 (dismissing claim under California Confidentiality of Medical Information Act because plaintiffs had failed "to allege what, if any, medical information or medical records were transmitted or disclosed" and that the plaintiffs' "vague allegations about [them] and their experiences with [the defendant]" and the complaint's "conjectures and hypothetical scenarios and patients" did not allege with "any specificity as to what medical information was allegedly disclosed or when it was disclosed.").

Given these deficiencies, Plaintiff's ECPA claim should be dismissed as a matter of law and with prejudice, as further amendment would be futile. *In re Nickelodeon*, 827 F.3d at 275; *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 142-43; *In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 713.

### C. Plaintiff Has Failed to State a CIPA Claim (Count II)

CIPA section 631(a) imposes liability on any "person" who:

> by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system [("**Clause One**");] or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state [("**Clause Two**");] or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained [("**Clause Three**");] or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above [("**Clause Four**").]

Plaintiff alleges Sono Bello "aided, agreed with, and conspired with [Meta] to track and intercept Plaintiff's and Class Members' internet communications while accessing [Sono Bello's] Website" (Compl. ¶ 178), thereby basing her CIPA claim on an alleged violation of Clause Four. Thus, Plaintiff can assert a violation of Clause Four only after alleging a violation of Clauses One, Two, or Three by Meta. *Cody v. Ring LLC*, 718 F.Supp.3d 993, 999 (N.D. Cal. 2024). However, Plaintiff cannot assert a predicate violation of Clause One because it does not apply to internet connections, nor has she alleged any predicate violations of Clause Two or Clause Three since she fails to allege sufficient facts showing (a) any interception of "contents" of communications while


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

they are "in transit," as required by Clause Two, or (b) Meta used or attempted to use Plaintiff's information, which is required to state a predicate violation of Clause Three.

***1. Plaintiff cannot assert a predicate violation of Clause One because it does not apply to internet connections***

Previous cases have consistently held that Clause One does not apply to internet connections, only telegraphs and telephones. *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102-DMS (KSC), 2024 WL 559241, at *2 (S.D. Cal Feb. 12, 2024) (citing *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 WL 7006793, at *6 (S.D. Cal. Oct. 24, 2023) ("Because Clause One does not apply to internet connections, prospective plaintiffs who allege their communications were intercepted when using their smartphones as computers (for example, to access and browse the internet) are foreclosed from stating a claim under Clause One of section 631."); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103, 1106 (C.D. Cal. 2023) (courts "have consistently interpreted this clause as applying only to communications over telephones and not through the internet" and the California Legislature has not redefined section 631 as applying to internet communications); *Cody*, 718 F.Supp.3d at 999. At issue here are Plaintiff's alleged communications through the internet, which forecloses Plaintiff from alleging any underlying violation of Clause One.

***2. Plaintiff fails to plead facts showing whether or what "content information" was disclosed to Meta***

Through her recitation of the legal conclusion that "sensitive and confidential communications," "sensitive and confidential PII," or "confidential PHI" are transmitted to Meta, Plaintiff tries to blur the very bright line between online browsing information and actual patient records or patient-doctor communications. However, as discussed in Section III.B(3) above, Plaintiff fails to allege facts showing that the substantive contents of her communications have ever been transmitted to Meta, and her CIPA claim based on a predicate violation of Clause Two is insufficient as a matter of law.

*In re Zynga Privacy Litig.*, 750 F.3d 1098, is instructive. In *Zynga*, the court distinguishes URLs and communication "contents," explaining that a URL could disclose that a person viewed



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

the "page of a gay support group," yet affirming that such URLs "function[] like an 'address,'" not "contents" of a communication. *Id.* at 1107; *see also Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 935 (a URL sent to [Meta] by a user's browser does not qualify as "contents" of a "communication" because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication.'") (citation omitted). A court also concluded that session replay software that recorded the plaintiff's interactions on the defendant's website, namely "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation" were "more akin to the 'record' information that the [*Zynga* court] held not to be contents[.]" *Mikulsky v. Bloomingdale's, LLC*, No. 3:23-CV-00425-L-VET, 2024 WL 337180, at *7 (S.D. Cal. Jan. 25, 2024). Here, Plaintiff at most alleges disclosure of HTTP requests, button clicks, key presses, and page navigation. Compl. ¶¶ 34, 38, 39, 42-44, 115. As *Zynga* makes clear, page views, URLs, and GET requests that may disclose what page a website visitor is viewing are record information, and no CIPA claim can be stated. *Zynga*, 750 F.3d at 1107. And as *Mikulsky* makes clear, button clicks, page navigation, and keystrokes are similarly recording information, *not* contents of a communication. *Mikulsky*, 2024 WL 337180, at *7.

Plaintiff has failed to allege that any contents of her communications were transmitted or intercepted and have therefore failed to allege a violation of Clause Two.

### *3. The Pixel does not intercept communications "in transit"*

Plaintiff does not—and cannot—plead facts showing that Meta intercepted any communication while it was "in transit," as required under Clause Two. The *Smith I* court has already held that nearly identical allegations about technologies that caused online browsing information to be sent from a user's browser to Meta did:

> [N]ot establish that the Healthcare Defendants 'send' information to Facebook[.] More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens independently.

262 F. Supp. 3d at 951. In other words, rather than an interception, two separate communications



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

occur—one between the hospital website and the user's browser, and one between the user's browser and Facebook. No communication is being intercepted in transit. *Id*. Plaintiff even admits that there are two separate communications. *See* Compl. ¶ 39 (alleging the Meta Pixel "sent secret instructions back to the individual's browser" and second "Facebook caused the browser to secretly duplicate the communication with Defendant, transmitting it to the Facebook's servers"); *id.* (alleging duplication of communications and that the transmissions to Meta occurred "contemporaneously"). Plaintiff's failure to allege that any communications, let alone any of *Plaintiff's* communications, were intercepted "in transit" dooms her CIPA claim based on a predicate of violation of Clause Two.

#### 4. *Plaintiff fails to plead facts showing Meta actually used or attempted to use contents of Plaintiff's communications*

A party violates Clause Three when they "use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information [obtained through a violation of Clause One or Two]." Cal. Penal Code § 631(a). Thus, "[a] finding of a violation under [Clause Three] is contingent on a finding of a violation of [Clause One or Clause Two]." *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *11 (E.D. Cal. Mar. 30, 2023) (citing *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020)). Moreover, Clause Three "specifically includes a use requirement." *D'Angelo*, 2023 WL 7006793, at *9. Plaintiff has failed to adequately allege any predicate violation by Meta of Clause Three, and thus their CIPA claim fails.

Because they have failed to allege facts showing that any content information was intercepted in transit in violation of Clause Two, Plaintiff necessarily cannot allege any facts establishing Meta used the contents of any communication in violation of Clause Three. *See Cody*, 718 F.Supp.3d 993 at 1003 (dismissing CIPA claim where plaintiff failed to state a claim under Clause One and Clause Two and thus failed to allege facts suggesting defendant used or communicated any information obtained through a violation of Clause One or Clause Two); *Martin*, 2023 WL 2717636, at *11.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Furthermore, the only allegations in the Complaint that come close to alleging Meta used or attempted to use intercepted communications involve hypothetical examples of what *may* happen when an individual clicks a particular button on Sono Bello's Website (Compl. ¶¶ 39, 43, 44) and what information could hypothetically be transmitted to Meta. But these allegations say nothing about which of *Plaintiff's* communications were transmitted to Meta and Meta is alleged to have used, nor do they establish that Meta actually used or attempted to use any "content" information gleaned from *Plaintiff's* communications. Plaintiff alleges only that she "received targeted advertisement from Facebook marketing for weight loss procedures" (*id.* ¶ 9) but does not explain how that establishes *Meta* used the contents of her communications.

In sum, Plaintiff does not sufficiently allege that Meta intercepted communication contents in transit (Clause Two) or used any such contents (Clause Three). Nor does Plaintiff plead facts showing that Meta used her "private information" in the manner required to sustain a CIPA claim.

### D. <u>Plaintiff Has Failed to State a CMIA Claim (Count III)</u>

Plaintiff claims Sono Bello violated California Civil Code section 56.10(a), which prohibits health care providers from disclosing (*i.e.* affirmatively sharing) actual patients' medical information with another person or entity without first obtaining an authorization. Cal. Civ. Code § 56.10(a); *Sutter Health v. Sup. Ct.*, 227 Cal. App. 4th 1546, 1555-56 (2014) ("*Sutter*"). However, Plaintiff has failed to plead facts showing she is a patient, and failed to plead facts sufficient to show that any of her medical information or medical records were transmitted to or actually viewed by any person at Meta.

As a threshold matter, Plaintiff does not allege she is a "patient" of Sono Bello subject to the CMIA. Compl. ¶¶ 8-9 (alleging only that Plaintiff booked a consultation at Sono Bello).[2] Nor is her putative class definition limited to patients. *Id.* ¶¶ 65-66. A "patient" is defined under the CMIA as someone who "received health care services from a provider of health care and to whom

---

[2] Plaintiff does allege in conclusory fashion that she and other putative class members are "patients under the definition in CMIA" (Compl. ¶ 112), but the Court should properly disregard such non-factual and conclusory allegations, particularly where they are inconsistent with other factual allegations in the Complaint, *i.e.*, *id.* ¶¶ 8-9 (alleging merely that Plaintiff booked a consultation). *Beckington*, 926 F.3d at 604.


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

medical information pertains." Cal. Civ. Code § 56.05(a). Because Plaintiff pleads facts showing only that she "book[ed] a consultation" as a public website user—as opposed to an actual patient receiving health care services—the CMIA does not apply. Even if Plaintiff later became a patient, that does not matter because the operative allegations concern Plaintiff as a public website user only. Sono Bello is aware of no authority allowing a CMIA claim to proceed under such circumstances.

Separately, Plaintiff's alleged activities on Sono Bello's public-facing Website are insufficient to support a CMIA claim. *Smith I*, 262 F. Supp. 3d at 954-55 (disclosure to Meta of browsing history on healthcare providers' public websites, as alleged here, did not disclose protected health information because "[t]hese pages contain general health information that is accessible to the public at large."). "Information available on publicly accessible websites" is not equivalent to "information that unequivocally provides a window into an individual's personal medical history." *Smith II*, 745 F. App'x *8, *9; *see also Smith I*, 262 F. Supp. 3d at 954-55 (dismissing CMIA claim because contents of healthcare providers' webpages publicly available online did not relate to "past, present, or future physical or mental health or condition of an individual"); *Gibson v. Stanford Health Care*, Order Sustaining Defendant's Demurrer, No. 23CV413522 at *12 (Cal. Super. Ct. Sept. 18, 2024) ("Plaintiff's alleged activities on [Stanford's] *public* website do not amount to 'medical information,'" particularly given the "distinction between the general health information contained on such [public] websites and personally identifiable patient records and medical histories that are the target of statues like CMIA.") (citation omitted). Rather, the "data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status *or medical information*." *Smith II*, 745 F. App'x at *9 (emphasis added).

The mere fact that the Meta Pixel was implemented on Sono Bello's public-facing Website (Compl. ¶ 85), and Plaintiff's allegation that she used the Website to "book a consultation for a surgical weight loss procedure" (*id.* ¶ 9), fails to demonstrate that information about (a) the treatment Plaintiff *actually* received (if any), (b) discussions she may have had with her provider(s)

about her medical care, or (c) any other information relating to her past, present, or future health conditions, was ever disclosed to Meta. A court within the Ninth Circuit dismissed a CMIA claim for this precise reason, concluding that the plaintiffs failed "to allege what, if any, medical information or medical records were transmitted or disclosed" and that their "vague allegations about [them] and their experiences with [the defendant]" and the complaint's "conjectures and hypothetical scenarios and patients" did not allege with "any specificity as to what medical information was allegedly disclosed or when it was disclosed." *B.K.*, 2024 WL 878100, at *5-9 (dismissing CMIA claim with leave to amend); *see also Nienaber*, 2024 WL 2133709, at *5 ("Plaintiff also alleges that when a patient uses the general search bar located on Defendant's website homepage, the exact text and phrases typed by the user are transmitted to Google via the Google Tag Manager. . . . But the example given simply shows a search on Defendant's Public Website for the word "cancer" which pulled up generic information regarding certain services and general information on prostate cancer. . . . Plaintiff does not allege that the text and phrases are transmitted in addition to any information identifying the user as a patient, nor does she make specific allegations as to her use of this general search bar."); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) ("*Rush II*") ("Kurowski cannot reasonably expect to bring a lawsuit related to the invasion of her medical privacy and completely evade revealing what it is that she alleges Rush disclosed to third parties."); *Doe v. MKS Instruments, Inc.*, No. SACV23-00868-CJC (KESx), 2023 WL 9421115, at *5 (C.D. Cal. Nov. 3, 2023) (dismissing CMIA claim because allegation that plaintiff gave defendant "medical information" including "information about disabilities, health and medical conditions" was insufficient to allege defendant possessed plaintiff's medical information); *M.G. v. Therapymatch, Inc.*, No. 23-cv-044220AMO, 2024 WL 4219992, at *1, 3 (N.D. Cal. Sept. 16, 2024) (where plaintiff alleged he "began using Headway's online platform to search for a mental health professional[,] provided personal information on the website, including his name, address, cellular phone number, health insurance provider, group identification number, and employer[, and] specified that he was looking for therapy related to two specific, unidentified, mental health conditions" and that "Google intercepted M.G.'s


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

communications with Headway, including the mental health conditions he searched, the treatment he was seeking, provider preferences, and appointment details," court still dismissed CMIA claim because it could not "determine based on these sparse, generalized allegations whether M.G. shared (and thereafter Headway disclosed) 'substantive information' regarding his 'medical condition, history, or treatment'"). The same is true here. *See Eisenhower Med. Ctr. v. Sup. Ct.*, 226 Cal. App. 4th 430, 435 (2014) ("mere fact that a person may have been a patient . . . at some time is not sufficient. If interpreted as Plaintiffs wish, then release by a health care provider of personal identification would be sufficient whether or not there was a release of substantive information regarding that person's medical condition, history, or treatment"); *Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (although plaintiff alleged disclosure of name, phone number, treating physician names, treatment appointment information and discharge dates and times, such information did not constitute "medical information" and "[d]escribing an examination as treatment does not make it so. Beyond the conclusory use of the words 'treating' and 'treatment,' he does not allege facts that would allow the Court to infer that he received medical treatment during that examination. Thus, information about the appointment cannot be said to constitute information regarding treatment."); *MKS Instruments, Inc.*, 2023 WL 9421115, at *5 (dismissing CMIA claim because allegation that plaintiff gave defendant "medical information" including "information about disabilities, health and medical conditions" was not sufficient to allege defendant possessed plaintiff's medical information); *Rush II*, 659 F. Supp. 3d at 940 (in a case involving substantially identical allegations, court concluded plaintiff had failed "to allege the disclosure of any information related to the provision of treatment to her or other similarly situated . . . patients" and noted "the hypotheticals provided by Kurowski appear to illustrate only what occurs when an individual—whether a patient or not—clicks on certain areas of Rush's public website").

Further, in a similar case where plaintiffs alleged a defendant shared their data with third parties, and that this data was used to create targeted advertisements, the court found that "absent allegations showing that an unauthorized party viewed the confidential information, [the CMIA

claim] fails." *See Amgen*, 2024 WL 25226869, at *9; *see also Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 213 (2022) ("[A] breach of confidentiality under the CMIA requires a showing that an unauthorized party viewed the confidential information."); *Maxwell v. The Regents of the Univ. of Cal.*, Minute Order, No. 34-2023-00336792-CU-BT-GDS, at 13 (Cal. Sup. Ct. Jan. 19, 2024) ("California decisions construing the CMIA make it clear that to qualify as a breach… the medical information must have actually been read by an unauthorized person.") (citing *Sutter*, 227 Cal. App. 4th at 1557). Here, like in *Amgen*, the Plaintiff fails to plead facts showing that Meta or any unauthorized person *actually* viewed her PHI. Thus, the Plaintiff's CMIA claim should be similarly dismissed.

## IV. CONCLUSION

Because amendment would be futile, Sono Bello respectfully asks the Court to grant its motion to dismiss the Complaint with prejudice.

Dated Friday, January 31, 2025.

*s/ Alexander Vitruk*
Alexander Vitruk, WSBA No. 57337
Logan F. Peppin, WSBA No. 55704
**BAKER & HOSTETLER LLP**
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
T: (206) 332-1380
E-mails: avitruk@bakerlaw.com
lpeppin@bakerllaw.com

Paul G. Karlsgodt, WSBA No. 40311
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
T: (303) 861-0600
E-mail: pkarlsgodt@bakerlaw.com

*Attorneys for Defendant*

*I certify that this document contains 6553 words, in compliance with the Local Civil Rules.*

**CERTIFICATE OF CONFERAL**

Pursuant to Section (V)(G) of this Court's Standing Order, Alexander Vitruk, counsel for Defendant, and Stephen Beck and Sarah Westcot, counsel for Plaintiff met and conferred on January 24, 2025 to discuss the anticipated Motion to Dismiss but were unable to reach an agreement that would render the Motion to Dismiss unnecessary.

.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served via USDC Western Washington ECF Notice and/or E-Mail upon the following:

Wright A. Noel
**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel: (425) 837-4717
Fax: (425) 837-5396
E-mail: wright@carsonnoel.com

Sarah N. Westcot
Stephen A. Beck
**BURSOR & FISHER, P.A.**
701 Brickell Avenue, Suite 2100
Miami, Florida 33131
Tel: (305) 330-5512
Fax: (305) 679-9006
E-mails: swestcot@bursor.com
sbeck@bursor.com

*Attorneys for Plaintiff and the Putative Class*

DATED Friday, January 31, 2025 at Seattle, Washington.

*s/ Cheryl A. Phillips*
Cheryl Phillips, Legal Assistant