THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T.S., individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>BODY CONTOUR CENTERS, LLC d/b/a SONO BELLO, a Delaware limited liability company,<br><br>*Defendant.* | Case No. 2:24-cv-01944-LK<br><br>**PLAINTIFF T.S.'S RESPONSE IN OPPOSITION TO DEFENDANT BODY CONTOUR CENTERS, LLC'S MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR: FEBRUARY 28, 2025 |



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

## TABLE OF CONTENTS


**PAGE(S)**

INTRODUCTION .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 3

I. PLAINTIFF STATES A CLAIM UNDER THE ECPA .......... 3

A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose .......... 3

B. Defendant Intentionally Used The Facebook Tracking Pixel To Intercept Plaintiff's Communications .......... 5

C. Plaintiff Alleges That The "Contents" Of Her Communications Were Intercepted By Facebook .......... 7

II. PLAINTIFF STATES A CLAIM UNDER THE CIPA .......... 8

A. The First Clause Of CIPA Applies To Defendant's Online Wiretaps .......... 8

B. Plaintiff Alleges That Meta Intercepted The "Content" Of Her Communications .......... 9

C. Plaintiff Alleges That The Interceptions Occurred "In Transit" .......... 11

D. Plaintiff Alleges That Meta Used The Contents Of Her Communications .......... 12

CONCLUSION .......... 12




CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) .......... 1

*American Hospital Ass'n v. Becerra*,
738 F.Supp.3d 780 .......... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 4

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 4, 8

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 10

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 7

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) .......... 11

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 2

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 7

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) .......... 3

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... passim

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 132 .......... 6



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 7, 10

*Jackson v. LinkedIn Corp.*,
2024 WL 3823806 (N.D. Cal. Aug. 13, 2024) .......... 8

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 9

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 3

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .......... 9

*Kurowski v. Rush Sys. For Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .......... 3, 4

*Lonegan v. Hasty*,
436 F.Supp.2d 419 (E.D.N.Y.2006) .......... 6

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) .......... 2

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 8, 9

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 3, 7

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 11

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... 4, 5, 8

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 6

*R.S. v. Prime Healthcare Services, Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 6

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 11

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .......... 9



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 8, 11

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) ........ 2

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 5, 10

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 3

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........ 11

**STATUTES**

18 U.S.C. § 2510(8) ........ 7, 10

18 U.S.C. § 2511 ........ 3, 6

18 U.S.C. § 2520 ........ 6

42 U.S.C. § 1320d(6) ........ 4, 5



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

## INTRODUCTION

Defendant Body Contour Centers, LLC d/b/a Sono Bello ("Defendant") operates a national chain of medical facilities that function for the sole purpose of performing surgical weight loss procedures. Individuals struggling with body image concerns or health related conditions due to their weight can book an appointment for surgical procedures on Defendant's website, sonobello.com (the "Website"). *See* Class Action Complaint (ECF No. 1) ("Compl.") ¶ 3. Unbeknownst to its patients, Defendant assists Facebook, the world's largest social media company, with intercepting information related to their appointments for these surgical weight loss procedures. *See, e.g., id.* Figure 1. Such information is not shared for the purpose of providing treatment, but rather, solely for the purpose of targeted advertising – allowing Facebook to monetize the private medical information it illegally intercepts. Facebook does not only utilize this information for Defendant's benefit, but also for its own. *See, e.g., id.* ¶ 41. More importantly, such information is protected from disclosure by federal law. *Id.* ¶¶ 20-31.

Like all other putative class members, Plaintiff booked an appointment for a surgical weight loss procedure on Defendant's Website. *Id.* ¶¶ 8-9. During this time, Plaintiff maintained an active Facebook account. *Id*. Unbeknownst to Plaintiff, and without her consent, information related to her medical appointment was intercepted through the Facebook Tracking Pixel, a tracking code Defendant embedded on its Website. The information disclosed to Facebook includes the specific weight loss procedure Plaintiff was scheduling a consultation for. *Id.*; *see also id.* Figure 1. Defendant's actions demonstrate a blatant disregard for its duties as a medical provider as well as its patients' privacy interests.

Defendant now moves to dismiss Plaintiffs' claims. *See* Defendant's Motion to Dismiss (ECF No. 17) ("MTD"). However, the defenses raised by Defendant mainly rely on misstatements of both law and fact. For example, Defendant spends a significant amount of its introduction discussing the *Becerra* decision, which vacated the "Proscribed Combination" issued by the U.S. Department of Health and Human Services ("HHS"). *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 807 (N.D. Tex. 2024). As conceded by Defendant, the



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

"Proscribed Combination" was an attempt by HHS to expand the definition of IIHI to include situations where "an online technology connects (1) an individual's *IP address* with (2) a *visit* to a [unauthenticated public webpage] addressing specific health conditions or healthcare providers." *Id.* at 789. However, the Proscribed Combination is wholly irrelevant to Plaintiff's claims. Plaintiff does not allege that Defendant assisted in the interception of her IP address, but rather, her Facebook ID. Additionally, Plaintiff's allegations do not concern mere visits to public webpages, but rather, the scheduling of medical consultations for surgical weight loss procedures. Contrary to Defendant's assertions, the *Becerra* court explicitly provided that "[s]uch vacatur is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document." *Id.* at 807 fn 8. Defendant's remaining arguments fare no better, as discussed more thoroughly herein.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

## ARGUMENT[1]

### I. PLAINTIFF STATES A CLAIM UNDER THE ECPA

#### A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendant argues that "Plaintiff cannot establish that any communication has been unlawfully 'intercepted'" because the "ECPA is a one-party consent statute." MTD at 5. However, as conceded by Defendant, the party exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

Defendant's conduct falls squarely within the crime-tort exception because it intended to violate various tort and criminal laws through the interception of Plaintiff's communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization. Compl. ¶¶ 25, 91-93. Multiple federal courts have found substantially similar allegations sufficient to trigger the crime-tort exception. *See Kurowski v. Rush Sys. For Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception…[and that the complaint] plausibly state[d] a claim for relief under the Wiretap Act"); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (same); *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 927–28 (D. Minn. 2024) (finding allegations that defendant violated HIPAA's disclosure rule was sufficient to invoke the crime-tort exception); *see also In*

---

[1] Plaintiff withdraws her claim under California's Confidentiality of Medical Information Act.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

*re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("*Meta Pixel I*") ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network,* 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquiries" in "violation of various state tort claims and state and federal laws").

The authority relied upon by Defendant is distinguishable, as *none* of those cases contained allegations related to the disclosure of a patient's medical appointment. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1084 (W.D. Wash. 2024) ("Plaintiff provides no information as to whether she used Defendant's Public Website to schedule an appointment"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (allegations too vague as to type of information allegedly disclosed). Additionally, Defendant's reliance on *Kurowski, et al. v. Rush Sys. for Health* is misguided, as the court reversed this decision and upheld the plaintiffs' ECPA claim nine months later in *Kurowski III* after the plaintiffs refined their allegations. 2023 WL 8544084, at *3-4.

Finally, Defendant argues that Plaintiff cannot predicate her allegation of criminal or tortious conduct based on a HIPAA violation due to the *Becerra* decision. However, Plaintiff's claims do not rely on the vacated guidance issued by the HHS. In that guidance, the HHS attempted to expand the definition of individually identifiable health information ("IIHI") in the "Proscribed Combination" to include an individual's IP address in certain circumstances, such as browsing a public webpage. *See American Hospital Ass'n v. Becerra*, 738 F.Supp.3d 780, 789. "IIHI is unambiguously defined as PHI that (1) 'relates to' and individual's 'past, present, or future physical or mental health or condition,' the individual's receipt of 'health care,' or the individual's 'payment for' healthcare; *and* (2) 'identifies the individual' or provides 'a reasonable basis to believe that the information can be used to identify the individual.'" *Id.* at 800-01 (quoting 42 U.S.C. § 1320d(6)). The court in *Becerra* found this problematic under both requirements for IIHI.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

First, browsing a public webpage, at best, would only be "indicative" of the visitor's health or treatment status. *Id.* at 801. Second, the Proscribed Combination "does not and cannot identify an individual or the individual's PHI[.]" *Id.* at 802. The court in *Becerra* therefore determined that the "Proscribed Combination" was not compatible with HIPAA's definition of IIHI. *Id.* at 807.

The situation here is quite different, as it is not IP addresses that are being disclosed, but Facebook IDs which are easily tied to individuals' full names. Compl. ¶ 44. Moreover, here, Plaintiff did not merely browse one of Defendant's public webpages. Instead, Plaintiff booked an appointment for a highly sensitive medical procedure (surgical weight loss), which clearly relates to an "individual's receipt of health care." *See id.* ¶ 9; *Id.* Figure 1; 42 U.S.C. § 1320d(6); *see also Nienaber,* 733 F.Supp.3d at 1083 ("[d]isclosure through publicly available webpages that, plausibly relate to the provision of healthcare or connect a particular user to a particular healthcare provider may be actionable."); *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *5 (N.D. Cal. Oct. 1, 2024) (post-*Becerra* decision upholding a wiretap claim where "the URLs transmitted to Facebook and Google included…the reason for her medical appointment").

**B. Defendant Intentionally Used The Facebook Tracking Pixel To Intercept Plaintiff's Communications**

Defendant argues that Plaintiff's ECPA claim should be dismissed because there is no liability "for procuring, enabling, aiding or abetting another's interception," under the statute. MTD at 8. Defendant misunderstands Plaintiff's allegations.

Plaintiff alleges that "[t]hrough the Facebook Tracking Pixel, Defendant shared its patients' online activity, including their sensitive and confidential information…including information related to the weight loss surgical procedures it provides." Compl. ¶ 42. Additionally, "[e]ach time Defendant sent this activity data, it also disclosed patients' PII, including their Facebook ID." *Id.* ¶ 44. "By utilizing and embedding the Facebook Tracking Pixel on its Website, Defendant intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

Members." *Id.* ¶ 86. And "Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiff's and Class Members' privacy through the Facebook Tracking Pixel." *Id.* ¶ 95. Accordingly, Plaintiff does not bring her ECPA claim under an aiding and abetting theory. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 148 n. 2 (D. Conn. 2014) ("The statute prohibits an entity from intercepting, endeavoring to intercept or procuring another to intercept. We do not intend our definition of aider and abettor to cover a "procurer" as used in the statute. *See Lonegan v. Hasty*, 436 F.Supp.2d 419, 427–28 (E.D.N.Y.2006). ***A procurer is not an aider and abettor but one who violates the statute directly***.") (emphasis added). The *Lonegan* court also rejected the narrow interpretation of the ECPA argued by Defendant.

> To me, the more natural reading of the amended statute shows no intent on the part of Congress to eliminate the private right of action for procurement violations. In relevant part, the amended statute provides that "any person whose wire, oral, or electronic communication is intercepted ... in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation ..." 18 U.S.C. § 2520 (2005). Pursuant to Section 2511(1)(a), the class of persons whose communications are intercepted in violation of the Wiretap Act includes those persons whose communications are intercepted by someone who was procured to do so by a third party. In such case, both the person who actually intercepted the communications and the person who procured the interception have violated the Act, and the victim is authorized to sue any person or entity who engaged in that violation.

436 F.Supp.2d at 428. In any event, courts consistently find similar allegations sufficient to sustain a claim for violation of the ECPA. *See Id.* ("But even if Congress did eliminate the private right of action against those who procure the interception of protected communications, plaintiffs' Wiretap Act claims cannot be dismissed. As an alternative to their procurement theory of liability, plaintiffs assert that Hasty intercepted their communications directly. Therefore, even if the procurement theory fails, the direct interception theory is sufficient to support the claims"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024); *R.S. v. Prime Healthcare Services, Inc.*, 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025).



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

### C. Plaintiff Alleges That The "Contents" Of Her Communications Were Intercepted By Facebook

Defendant argues that Plaintiff's ECPA claim must be dismissed because she "fails to allege any facts showing that the substantive contents of her (or anyone's) alleged communications have ever been transmitted to Meta." MTD at 9. But this argument is premised on misstatements of fact and outdated case law.

Under the ECPA, "content" includes "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "For instance, contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication." *Meta Pixel I*, 647 F.Supp.3d at 795. The "post-domain name portions" of website URLs—everything after ".com"—also disclose details about the webpages requested and constitute "content" under the ECPA. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("post-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user.").

In the Ninth Circuit, "a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to a disclosure of the contents of a communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). Federal courts throughout the country have concluded that communications intercepted by the tracking technologies, like the Facebook Tracking Pixel, constitute "contents" if they reveal the substance of health queries between a patient and healthcare provider. *Meta Pixel* I, 647 F.Supp.3d at 795-96 (observing that "log-in buttons and…descriptive URLs…are 'contents' within the meaning of the statute…because they concern the substance of the communication."); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("here Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their PHI."); *Mekhail*, 726 F.Supp.3d at 926 (finding allegations "that substantive information, including details about medical appointments,


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

conditions, and treatments, was obtained via the Pixel" sufficiently "pleaded that 'contents' were intercepted."). Even the *Nienaber* court, which Defendant relies upon in support of its argument, explicitly stated that the "[d]isclosure through publicly available webpages that, plausibly relate to the provision of healthcare or connect a particular user to a particular healthcare provider may be actionable." 733 F.Supp.3d at 1083.

That is precisely what Plaintiff has alleged here. As detailed in her Complaint, and as supported by network traffic taken from the Website, Defendant discloses, through the Facebook Tracking Pixel, *the precise weight loss procedures its patients are seeking consultations for*. Compl. ¶¶ 9, 39-40, Figure 1. Specifically, as shown in Figure 1, Defendant discloses that one of its patients has scheduled a free consultation for a stomach fat removal procedure. Identical disclosures were made when Plaintiff, and any other putative class member, scheduled their consultation on Defendant's Website. *Id.* Courts facing similar motions to dismiss have repeatedly held that tracking technologies, like the Facebook Tracking Pixel, intercept the contents of communications. *See, e.g., Meta Pixel I*, 647 F.Supp.3d at 795 ("the log-in buttons" and "descriptive URLs…are 'contents' within the meaning of the statute.").

The authority relied upon by Defendant is inapposite, as those cases concerned mere browsing activity on public websites (*See, e.g., Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018)) or the allegations lacked specificity. *See Eisenhower*, 721 F.Supp.3d at 1064.

## II. PLAINTIFF STATES A CLAIM UNDER THE CIPA

### A. The First Clause Of CIPA Applies To Defendant's Online Wiretaps

Defendant contends that Plaintiff cannot bring a claim under the first clause of CIPA § 631(a) because "[p]revious cases have consistently held that Clause One does not apply to internet connections, only telegraphs and telephones." MTD at 11. This argument ignores relevant legal principles. For example, in *Jackson*, Judge Pitts held that CIPA applied to the LinkedIn Insight Tag (a similar internet tracking technology) and explained that "Section 631 applies to 'new technologies' such as computers, email, and the Internet." *Jackson v. LinkedIn Corp.*, 2024 WL 3823806, at *5 (quoting *Matera v. Google Inc.*, 2016 WL 8200619, at *20



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

(N.D. Cal. Aug. 12, 2016)). In *Matera*, the court correctly reasoned that the "California Supreme Court . . . regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." 2016 WL 8200619, at *20. After surveying California case law consistently applying this principle of law, the court in *Matera* concluded that "[b]ecause the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme, the Court is unpersuaded by Google's argument that CIPA can not apply to email because email did not exist at the time of CIPA's enactment." *Id.* In *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *8 (S.D. Cal. Jan. 12, 2024), the court applied *Matera* and reasoned that "[r]eading the first clause of Section 631 to apply only to communications through a wire ignores the fact that a statute may be read to apply to new technologies . . . ." *See also id.* ("[t]hough written in terms of wiretapping, § 631(a) applies to internet communications") (quoting *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022)); *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *4 (N.D. Cal. Oct. 21, 2024) ("Giving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies.").

Here, Plaintiff alleges that "Defendant aided, agreed with, and conspired with Facebook to track and intercept Plaintiff's and Class Members' internet communications while accessing the Website. These communications were intercepted without the authorization and consent of Plaintiff and Class Members." Compl. ¶ 103. Plaintiff therefore adequately pleads a violation of the first clause of CIPA.

**B. Plaintiff Alleges That Meta Intercepted The "Content" Of Her Communications**

Defendant argues that "Plaintiff fails to allege facts showing that the substantive contents of her communications have ever been transmitted to Meta." MTD at 11. That ignores Plaintiff's allegations and is at odds with well-established CIPA case law.

California courts have interpreted CIPA consistent with the federal Wiretap Act, which



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

defines "Contents" as "any information concerning the substance, purport, or meaning of [a] communication.'" *See* 18 U.S.C. § 2510(8); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). Courts have routinely found that "contents" include information conveyed to a website involving protected health information. *Meta Pixel I*, 647 F. Supp. 3d at 784 (finding that the defendant intercepted the "contents" of the plaintiff's communications where the plaintiff's "information, which is contemporaneously redirected to Meta, revealed their status as patients and was monetized by Meta for use in targeted advertising"); *id.* at 798 ("Meta mounts a single challenge to a single element here, arguing that plaintiffs cannot show that the intercepted information is "content" based on its arguments under the federal Wiretap Act. . . For the reasons given above, this challenge fails."); *Cousin*, 702 F. Supp. 3d at 976 ("Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their PHI.").

Defendant argues that Plaintiff merely recites vague legal conclusions when discussing what "contents" were intercepted by Defendant (MTD at 11), but Defendant's argument is belied by the factual allegations of the Complaint, which make clear that Defendant intercepted Plaintiff's and Class Members' "button click" events which includes "confidential information from consumers seeking to procure medical services," including the specific weight loss procedure they are booking an appointment for. Compl. Figure 1 (showing that a patient scheduled a consultation for a stomach fat removal procedure); *see also id.* ¶¶ 9, 39-40. The Facebook Tracking Pixel functioned in the same exact manner when Plaintiff scheduled her consultation for weight loss surgery as well. *Id.* ¶ 9. Accordingly, Plaintiff's and Class Members' interactions with the Website "reveal specific information about [the] user's queries [and] reflect the 'contents' of a communication." *St. Aubin*, 2024 WL 4369675, at *4. That is sufficient.

The authority relied upon by Defendant is inapplicable for the same reasons discussed, *supra*. *See, e.g., In re Zynga Privacy Litig.*, 750 F.3d at 1108 (finding that "a user's request to a search engine for specific information could constitute a communication such that divulging a



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

URL containing that search term to a third party could amount to a disclosure of the contents of a communication"). Additionally, *Mikulsky* is not relevant to this Court's analysis because it concerned the use of session replay technology, and the plaintiff did not allege the interception of medical information. *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 844–45 (S.D. Cal. 2024).

**C. Plaintiff Alleges That The Interceptions Occurred "In Transit"**

Defendant argues that Plaintiff's CIPA claim fails because she does not allege that any communications were intercepted "in transit." MTD at 12-13. That is wrong.

To satisfy the "in transit" requirement, Plaintiff need only "demonstrate a party intercepted the communication during its transmission, rather than once it was placed in electronic storage." *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 1626114, at *8 (C.D. Cal. Apr. 2, 2024). Here, Plaintiff more than plausibly explains how the Facebook Tracking Pixel is used to intercept Plaintiff's and Class Members' communications with the Website in real time, while they were in transit. *Id.* ¶¶ 38-39, 103, 105; *see also id.* Figure 1. Specifically, through the Facebook Tracking Pixel, Plaintiff's and Class Members' communications were intercepted at the time that Plaintiff and Class Members input said communications into the Website, as the function of the Facebook Tracking Pixel duplicated the communications with the Website and sent the same to Facebook. *Id*. Plaintiff's allegations thereby place Defendant on sufficient notice of the basis of what is alleged. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 979 (C.D. Cal. 2023) ("[T]he SAC makes quite clear that Valenzuela's allegation is that Akamai's code intercepts chat messages in real time and stores transcripts, which gives Nationwide plenty of notice on what is alleged . . . Nothing more than this combination of plausibility and notice is required at this stage.").

Defendant's arguments regarding separate communications lack merit. Notably, in *Revitch*, the court concluded that similar allegations satisfied CIPA's "in transit" requirement, rejecting the same arguments Defendant makes here. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("But it cannot be that anyone who receives a


CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

direct signal escapes liability…That person remains a third party, even as a direct recipient of the speaker's communication. Facebook acquired user communications by causing their browsers to transmit parallel signals, but that means of interception should not have stripped Facebook of its third-party status."); *see also id.* ("Even if the browser caused a parallel signal to be sent to NaviStone, that interception happened while the signal was already in transit from [plaintiff]'s device.").

**D. Plaintiff Alleges That Meta Used The Contents Of Her Communications**

Defendant argues that Plaintiff cannot establish a violation of Clause Three of the CIPA because she has not established a violation of Clause One or Two. MTD at 13. However, Plaintiff sufficiently alleges that Meta has violated the first and/or second prong of Section 631(a). As such, Plaintiff has satisfied the prerequisite for pleading a violation of the third prong of Section 631(a). *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiff must establish that the information at issue . . . was obtained through a violation of the first or second clauses.").

Additionally, Defendant argues that Plaintiff fails to allege that Meta used the contents of her communications. MTD at 14. But that argument is contradicted by the factual allegations in the Complaint—namely, that Defendant read and used the contents of Plaintiff's and Class Members' communications for purposes of creating advertising audiences. Compl. ¶ 41 ("After collecting and intercepting the information described in the preceding paragraph, Facebook processed it, analyzed it, and assimilated it into datasets like Core Audiences and Custom Audiences for targeted advertising purposes.").

**CONCLUSION**

For the foregoing reasons, Defendant's motion should be denied.



CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, Washington 98027
Tel: (425) 837-4717 • Fax: (425) 837-5396

Respectfully Submitted,

**T.S.**, individually and on behalf of all others similarly situated,

Dated: February 21, 2025

By: /s/ *Wright A. Noel*
Wright A. Noel

Wright A. Noel
wright@carsonnoel.com
CARSON NOEL PLLC
20 Sixth Avenue NE
Issaquah, WA 98027
Tel: 425.837.4717
Fax: 425.837.5396

Sarah N. Westcot*
swestcot@bursor.com
Stephen A. Beck*
sbeck@bursor.com
BURSOR & FISHER, P.A.
701 Brickell Avenue, Suite 2100
Miami, Florida 33131
Tel: 305.330.5512
Fax: 305.679.9006

**Pro hac vice* admission to be sought

*Attorneys for Plaintiff*

*I certify that this document contains 4,212 words, in compliance with the Local Civil Rules.*