THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T.S., individually on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BODY CONTOUR CENTERS, LLC d/b/a SONO BELLO, a Delaware limited liability company,<br><br>Defendant. | No. 2:24-cv-01944-LK<br><br>**DEFENDANT BODY CONTOUR CENTERS, LLC D/B/A SONO BELLO'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(B)(6)**<br><br>NOTE ON MOTION CALENDAR: FEBUARY 28, 2025<br><br>ORAL ARGUMENT REQUESTED |



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

# I. <u>INTRODUCTION</u>

Plaintiff T.S.'s ("Plaintiff") Opposition to defendant Body Contour Centers, LLC d/b/a Sono Bello ("Sono Bello") Motion to Dismiss ("Motion") Plaintiff's Class Action Complaint ("Compl.") underscores Plaintiff's failure to allege that Sono Bello engaged in anything more than the ubiquitous practice of using third-party analytics technologies on its ***public*** website. Plaintiff's claims rest upon allegations about how she used Sono Bello's public website (Compl. ¶¶ 8-9), that Plaintiff thereafter received advertisements relating to weight loss procedures (*id.* ¶ 9), and that information regarding a hypothetical website visitor's browsing activity may be transmitted to Meta. This amounts to nothing more than conclusory allegations that because the Meta Pixel ("Pixel") was implemented on the ***public*** website, the contents of Plaintiff's protected medical information *must* have been transmitted to Meta. Such bare allegations are wholly insufficient.

Even more problematic is Plaintiff's failure to allege the Pixel was implemented on any secure patient portal (because none exists), instead alleging only that the Pixel was implemented on Sono Bello's ***public*** website (Comp. ¶¶ 9, 39, 40, 42-49, 87, 88, 95, 103, 106, 115, 119) and what *may* happen when a hypothetical user visits that ***public*** webpage (*id.* ¶¶ 39, 43, 44). As the court in *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017) ("*Smith I*") correctly determined, "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes." *See also Smith v. Facebook, Inc.*, 745 F. App'x *8, *9 (9th Cir. 2018) ("*Smith II*") (affirming same).

Plaintiff has failed to plausibly allege any disclosure or transmission of her protected medical information. ***Plaintiff herself does not even allege facts showing that she was ever a patient at Sono Bello***. Compl. ¶¶ 8-9. In fact, Plaintiff tacitly conceded there was not and cannot be a disclosure of any medical information when she withdrew her claim under the California Medical Information Act, Cal. Civ. Code §§ 56 *et seq*. ("CMIA claim"), for which the disclosure of protected medical information is a prerequisite. Opp. at n.1.

This tacit concession is instructive in regard to Plaintiff's remaining wiretap claims under the federal Electronic Communications Privacy Act ("ECPA") and California Information Privacy



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Act ("CIPA"). Both claims require the disclosure of substantive ***"contents" of a communication***, not just its "characteristics." This lawsuit expressly alleges disclosure of "communications containing protected medical information" (*e.g.*, Compl. ¶ 5; *see also id.* ¶¶ 5, 9, 13, 31, 44, 55, 106). But if no "protected medical information" was disclosed—as Plaintiff now appears to acknowledge by withdrawing her CMIA claim—then how could the substantive "contents" of any such "communications" (*i.e.*, alleged *protected medical information*), have been disclosed?[1] That would make no sense. Accordingly, the ECPA and CIPA claims should be dismissed as well.

For this reason and other reasons set forth in Sono Bello's Motion and in this Reply, Plaintiff's claims must be dismissed.

## II. <u>THE ECPA CLAIM MUST BE DISMISSED</u>

### ***1. Plaintiff Still Fails to Allege Any Unlawful Interception***

Plaintiff argues the ECPA claim should survive through an *exception* to the ECPA's one-party consent rule — *the crime or tortious act exception*. Plaintiff does not challenge, and thus concedes, that the ECPA is a one-party consent statute, which generally means that an intended recipient of a communication (*i.e.*, Sono Bello) could not have unlawfully intercepted such a communication (that was directed to it). Mot. at 5-7; *see* Opp. at 3. In arguing that this general rule should not apply, Plaintiff misconstrues the crime or tortious act exception, which applies only if the plaintiff pleads a "tortious or criminal use of the acquired internet histories" ***separate and apart from*** the alleged recording or interception itself. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (refusing to apply exception in cookie privacy litigation where invasion of privacy "is a tort that occurs through the act of interception itself") (emphasis in original); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) ("Plaintiff points to no legal authority providing that the exception to § 2551(2)(d) is triggered when, as here, the tortious conduct is the alleged wiretapping itself."); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1096 (W.D. Wash. 2024) ("[T]he tortious or

[1] Especially considering (a) only a public-facing website is at issue here, and (b) the putative class does not even consist of patients but rather anyone who merely booked an appointment at Sono Bello. *See* Compl. ¶ 65.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

criminal act exception does not apply here.") (internal citation and quotations omitted); *Kurowski, et al. v. Rush Sys. for Health*, 659 F.Supp.3d 931, 938 (N.D. Ill. 2023) (same holding); *B.K. v. Eisenhower Med. Ctr.*, No. 23-2092, 2024 WL 878100, at *5 (C.D. Cal. Feb. 29, 2024) (dismissing ECPA claim for failing to plead facts showing defendant healthcare provider's "purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable"). Plaintiff admits that the only criminal or tortious intent alleged here relates to the wiretapping itself.[2] Opp. at 3.

This Court should follow Judge Lin's sound reasoning in *Nienaber*, a published decision from the Western District of Washington involving similar alleged facts and the same technology:

> Plaintiff argues that Overlake's "act of recording Plaintiff's and Class Members' communications" is distinct from the transmission of those communications to third parties, and that such transmission is an independent tortious or criminal act. Dkt. No. 21 at 23. But "Plaintiff points to no legal authority providing that the exception to § 2551(2)(d) is triggered when, as here, the tortious conduct is the alleged wiretapping itself." *Pena*, 670 F. Supp. 3d at 1119 (quoting *In re Google Cookie*, 806 F.3d at 145). *Pena* is instructive here: in *Pena*, plaintiffs alleged that GameStop covertly created secret transcripts of all communications through the chat feature on its website, which it then shared with Zendesk, a third party that harvests highly personal data from chat transcripts for sales and marketing purposes. Id. at 1115. The alleged conduct in *Pena* was significantly more bifurcated than the conduct alleged here, where Plaintiff alleges the simultaneous transmission of communications to third parties like Facebook (*see* Dkt. No. 1 ¶ 61), yet the court declined to distinguish between the act of recording and the act of transmitting. *Pena*, 670 F. Supp. 3d at 1120. Further, the "criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits." Id. (quoting *In re Google Cookie*, 806 F. Supp. 3d at 145). Plaintiff fails to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission. *See generally* Dkt. No. 1. For this reason, the tortious or criminal act exception does not apply here.

*Nienaber*, 733 F. Supp. 3d at 1096.

---

[2] Plaintiff relies on *Sussman v. Am. Broad. Co, Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) to advance her theory that "Defendant's conduct falls squarely within the crime/tort exception because it intended to violate various tort and criminal laws through the interception of Plaintiff's communications." However, under analogous facts, the *Sussman* court dismissed the ECPA claim because, just like in the present circumstances, there was no tortious or criminal intent *separate* from the alleged recording, interception, or transmission.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Moreover, courts have expressly rejected Plaintiff's argument (Opp. at 3) that a HIPAA violation may constitute independent criminal or tortious conduct sufficient to satisfy the crime-tort exception. *See, e.g.*, *Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (any finding that a HIPAA or privacy tort violation could have occurred would "encompass only the simultaneous interception and disclosure of information to Meta."); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (reaching same conclusion).[3]

Consistent with *Nienaber* and other well-reasoned decisions, the tortious or criminal act exception to the ECPA does not apply here. Therefore, the ECPA claim should be dismissed.

### ***2. Plaintiff Fails to Allege any Plausible Interception of "Contents"***

As noted, Plaintiff tacitly concedes that her substantive medical information—a prerequisite for the CMIA claim she has withdrawn—is *not* at issue. Opp., n. 1. Yet, Plaintiff simultaneously concludes that the "contents" of her alleged communications (*i.e.*, *alleged medical information*)—a prerequisite for her ECPA (and CIPA) claim—remain at issue. Opp. at 7-8. Plaintiff cannot have it both ways. The reality is that no substantive medical information, and correspondingly no "contents" of any alleged communications, are at issue here.

The Ninth Circuit's guidance in *Zynga* is instructive. The Ninth Circuit explained that even though a URL could disclose that a person viewed the "***page of a gay support group***," such URLs "function[] like an 'address,'" not "contents" of a communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (emphasis added). Here too, the alleged disclosure of a public website user (non-patient) browsing Sono Bello's website and/or clicking a button to schedule an appointment, does not reveal "contents" of any protected medical information, but rather the "address" of a URL. *Id*. Plaintiff also alleges that her Facebook ID was intercepted, but under *Zynga* this amounts to record information, nothing more. *Id.* at 1106-07 (in the ECPA "the term 'contents' refers to the intended message conveyed by the communication and does not include record

[3] Plaintiff's reliance on *B.K. v. Desert Care Network*, No. 2:23-cv-0521 SPG (PDx), 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) is misplaced because it involved an independent tort, unlike here.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

information regarding the characteristics of the message that is generated in the course of the communication.”).

Plaintiff makes no attempt to distinguish *Facebook Internet Tracking Litig.*, which held that a URL sent to Facebook by a user’s browser does not qualify as “contents” of a “communication” because it is nothing more than “record information regarding the characteristics of the message that is generated in the course of the communication.’” 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (citation omitted).

Plaintiff cites to *Mekhail v. N. Memorial Health Care*, 726 F.Supp.3d 916 (2024) and *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 96 (S.D. Cal. 2023) in support of her argument that “content” is at issue. However, those cases do not help Plaintiff and instead, underscore the fundamental flaw in Plaintiff’s lawsuit: the plaintiffs in *Mekhail* and *Cousin* alleged they were ***patients*** of the defendant and alleged ***specific*** allegations regarding what they searched, “including details about medical appointments, conditions, and treatments.” *Mekhail*, 726 F.Supp.3d at 926; *see also Cousin*, 702 F.Supp.3d at 973 (Plaintiffs’ complaint alleged “their particular medical conditions and alleged that they searched Defendant’s website for doctors who specialize in these conditions and for information about their conditions.”). No such allegations exist here.

Plaintiff has no meaningful answer to *Nienaber v. Overlake Hospital Medical Center*, 733 F. Supp. 3d 1072, 1082 (W.D. Wash. 2024), which relied on *Smith I* and held that “the [public] URLs, or the content of the pages located at those URLs, [do not relate] ‘to the past, present, or future physical or mental health or condition of an individual.’” Like the plaintiff in *Nienaber*, Plaintiff here has pled “nothing but browsing activity on a public website.” *Id.*; *see also Zynga*, 750 F.3d at 1106-07 (same). Plaintiff has not otherwise pled facts showing that her alleged interactions “plausibly relate to the provision of healthcare,” as Plaintiff is not an alleged patient, let alone facts “connect[ing] a particular [public website] user to a particular health care provider.” *Id.* at 1082.

Plaintiff relies on *R.C. v. Walgreen Co.*, No. EDCV 23-1933-JGB (SPx), 2024 WL 2263395 (N.D. Cal. May 9, 2024), but *Walgreen* is inapposite because its “allegations differ[ed] in kind and severity” than cases such as this one. In *Walgreen,* the “disclosure of [plaintiffs’] private



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

information to Meta via the Pixel included the purchasing of sensitive healthcare products (Monistat and a diabetes test kit) related to specific health conditions (yeast infection and diabetes)." No such allegations are present here.

Finally, Plaintiff attempts to downplay or limit the holding of *Am. Hosp. Ass'n, et al. v. Xavier Becerra, et al.*, No. 4:23-cv-01110-P, 2024 WL 3075865, at *12-14 (N.D. Tex. June 20, 2024) ("*AHA Decision*"), which overruled HHS' Proscribed Combination. The significance of the *AHA Decision* to Sono Bello's Motion is its clarification that an IP address on a publicly available website does *not* constitute individually identifiable health information. *Id*. Similarly, the alleged disclosure of a mere "Facebook ID" for some public website users, much like the alleged disclosure of a mere IP address, should not equate to the disclosure of individually identifiable health information. *Id.* at *12-14. Plaintiff notably does not allege that Meta ever used the Facebook ID to identify her as an individual, only that Meta "can" do so if it wanted. Compl. ¶¶ 44, 47, 49. Plaintiff otherwise relies on threadbare and speculative allegations about a hypothetical website user's theoretical experience with Defendant's public website. *Id.* ¶¶ 39, 43, 44. Regardless, those allegations are insufficient to establish "contents" of a communication, as detailed *supra*.

At best, the information allegedly collected and disclosed is the same type of "extrinsic information used to route a communication" that courts have repeatedly concluded does not constitute "contents" under wiretap statutes. *Google Cookie Placement*, 806 F.3d at 135. Plaintiff merely *concludes* in her Complaint that her "sensitive and confidential communications," "sensitive and confidential PII," and "confidential PHI" were sent to Meta. Compl. ¶¶ 9, 13, 31, 44, 55, 106. And in her Opposition, Plaintiff merely restates how she *used* the website, not what substantive contents of her actual communications were intercepted or how the contents of her own communications (not a hypothetical user's communications) were sent to Meta or in what format.

Accordingly, the ECPA claim should be dismissed for this separate reason.

***3. There Can Be No Civil Liability for Allegedly "Procur[ing]" or Aiding and Abetting an Alleged Interception Through the Pixel***

To evade the fact that the ECPA does not allow for an aiding and abetting claim, which is



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

exactly what Plaintiff has asserted against Sono Bello, Plaintiff argues Sono Bello "misunderstands Plaintiff's allegations" and that Sono Bello "intercepted [her] communications directly." Opp. at 6:24. However, Plaintiff fails to allege any *facts* that it was *Sono Bello* that intercepted Plaintiff's data; moreover, Sono Bello could not have "directly" intercepted its own data under the ECPA's one-party consent framework. *See Nienaber*, 733 F. Supp. 3d at 1096. On the face of the Complaint, any alleged interception was done by a third party through its technology (Meta via Meta Pixel), and because there is otherwise no aiding and abetting liability under the ECPA, Plaintiff cannot state her (inherently aiding-and-abetting-based) ECPA claim against Sono Bello. Mot. at 5-7.

Plaintiff cites to *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132 (D. Conn. 2014) in support of her argument, but in *Trilegiant*, the court dismissed the plaintiffs' ECPA claims because, just like the Plaintiff here, they did "not sufficiently state[] how the [] Defendants aided or abetted the interception of the Plaintiffs' confidential billing information. In fact, the Plaintiffs have not even alleged that the [Defendants] knew or were involved in the datapass at all." *Id*. at 148. And *Lonegan v. Hasty*, 436 F. Supp. 2d 4219 (E.D.N.Y. 2006) is easily distinguishable because again, unlike here, the Plaintiff alleged that the defendant "intercepted their communications directly." Here, Plaintiff's underlying allegations identify Meta – not Sono Bello – as the party that allegedly intercepted the communications. Compl. ¶ 39.[4]

## III. <u>THE CIPA CLAIM MUST BE DISMISSED</u>[5]

Plaintiff has failed to allege any underlying violations of Clauses One, Two, and Three of Penal Code section 631(a), which dooms her claim under the CIPA as asserted under Clause Four. *Cody v. Ring LLC*, 718 F.Supp.3d 993, 999 (N.D. Cal. 2024).

### *1. Plaintiff Fails to Show a Predicate Violation of Clause One Because it Does Not Apply to Internet Connections*

Plaintiff argues Clause One applies to new technologies. Opp. at 8-9. In support of this

[4] Plaintiff also cites to *R.S. v. Prime Healthcare Services, Inc.*, No. 5:24-cv-00330-ODW (SPx), 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025) in support of her argument, but the court in *Prime Healthcare* did not address the issue of procuring or aiding and abetting an alleged interception.

[5] The definitions of Clause One, Clause Two, Clause Three, and Clause Four as set forth in Sono Bello's Motion (Mot. at 10) apply to these terms as used herein.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

argument, Plaintiff cites to *Jackson v. LinkedIn Corp*., 744 F.Supp.3d 986 (2024), *Kauffman v. Papa John's Int'l, Inc*., No. 22-cv-1492-L-MSB, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024), and *Shah v. Fandom, Inc*., No. 24-cv-01062-RFL, 2024 WL 4539577, at *4 (N.D. Cal. Oct. 21, 2024), but all three of these decisions do not involve the Meta Pixel, like here, and rely on an older decision, *Matera v. Google Inc*., N. 15-cv-040620LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016), in support of the proposition that Clause One applies to new technologies. However, since the *Matera* decision, California courts have consistently refused to apply Clause One to new technologies. *See e.g*., *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102-DMS (KSC), 2024 WL 559241, at *2 (S.D. Cal. Feb. 12, 2024) (citing *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 WL 7006793, at *6 (S.D. Cal. Oct. 24, 2023)); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103, 1106 (C.D. Cal. 2023); *Cody*, 718 F.Supp.3d at 999. Tellingly, Plaintiff fails to distinguish these directly on-point decisions. Regardless, even if Clause One applies here (it does not), Plaintiff fails to allege a predicate violation of clauses Two and Three.

### 2. *Plaintiff Fails to Adequately Allege Whether or What "Content" Was Disclosed to Meta*

By withdrawing her CMIA claim, Plaintiff tacitly concedes that only ***public*** website browsing is at issue in her Complaint and that there was no disclosure of any medical information. Opp. at n.1. Plaintiff argues her Complaint "make[s] clear that Defendant intercepted Plaintiff's and Class Members' 'button click' events." Opp. at 10 (*citing* Compl. Figure 1; *id.* at ¶¶ 9, 39-40). However, Plaintiff fails to establish what exactly was disclosed when she used the website and whether that information contained her substantive medical information. At best, the Complaint provides only hypothetical allegations regarding button clicks, URLs, and GET requests (Compl. ¶¶ 39-40, Figure 1), and in the absence of specific allegations about what substantive "content" of the "button click events" was transmitted to any third party, Plaintiff cannot establish that any "content" information related to her protected medical information was ever transmitted to or intercepted by a third party. In short, only browsing activity on a public website is at issue here, *not* actual patient records or patient-doctor communications, and because URLs do not constitute

"contents" of a communication, the CIPA claim fails as a matter of law. *See Zynga*,750 F.3d at 1107; *see also Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 935; *Mikulsky*, 2024 WL 337180, at *7 (citation omitted) (concluding button clicks, mouse movements, page navigation, and key presses are more akin to "record" information, not "contents").

Plaintiff notably fails to distinguish *Mikulsky v. Bloomingdale's LLC*, which is directly on point as the "interactions" at issue in *Mikulsky* included "page navigation" just like here. No. 3:23-CV-00425-L-VET, 2024 WL 337180, at *7 (S.D. Cal. Jan. 25, 2024); *see also Zynga*, 750 F.3d at 1107 (page views, URLs, and GET requests, at issue here, that may disclose what page a website visitor is viewing are record information, and no CIPA claim can be stated).

### *3. The Pixel Does Not Intercept Communications "In Transit"*

Plaintiff's argument that Meta intercepted any communication "in transit," as required by Clause Two of Penal Code section 631(a), directly contradicts *Smith I*, where the Northern District of California held that nearly identical allegations about technologies that caused browsing information to be sent from a user's browser to Meta did:

> …not establish that the Healthcare Defendants 'send' information to Facebook...More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens independently...

262 F. Supp. 3d at 951. Plaintiff does not meaningfully dispute that, rather than an interception, two separate communications occur—one between the website and the user's browser, and one between the user's browser and Meta (*id.*), and that the Complaint describes the Meta Pixel in this very way. *See* Compl. ¶ 39 (alleging the Meta Pixel "sent secret instructions back to the individual's browser" and second "Facebook caused the browser to secretly duplicate the communication with Defendant, transmitting it to the Facebook's servers"); *id.* (alleging duplication of communications and that the transmissions to Meta occurred "contemporaneously").[6]

---

[6] Plaintiff relies on *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022), which involved Meta, the creator of the technology at issue, not a healthcare defendant allegedly using it. This critical distinction was recognized in *Smith I*, but not addressed in *In re Meta Pixel*.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Plaintiff's reliance on *Heiting v. Taro Pharm USA, Inc.*, 728 F. Supp. 3d 1112 (2024) is misplaced. The court in *Heiting* did not include a substantive analysis of the "in transit" requirement whatsoever, and in fact, similar to the Plaintiff here, found the plaintiff's allegations which "merely restate the statutory language", was "insufficient under the plausibility standard." *Id.* at 1126. Moreover, *Valenzuela v. Nationwide Mut Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023) is inapposite with respect to the "in transit" requirement since it involved a chat feature software and "real time interceptions" allegations, which Plaintiff does not assert here. *See also Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (similarly involving a different technology – session replay software).

#### ***4. Plaintiff Has Not Adequately Alleged Meta Actually Used or Attempted to use Contents of Plaintiff's Communications***

Plaintiff cannot demonstrate Meta violated Clause Three since a violation of Clause Three is contingent upon finding a violation of either Clause One or Clause Two, which Plaintiff has failed to adequately allege (Mot. at 13-14). Even if Plaintiff had alleged a violation of Clause One or Two (she has not), Plaintiff has not adequately alleged facts showing Meta used or attempted to use the contents of Plaintiff's communications that were purportedly disclosed to Meta. *D'Angelo*, 2023 WL 7006793, at *9. Merely alleging how the Pixel can function fails to allege Meta actually used any contents of Plaintiff's communications. Nor does Plaintiff adequately allege the contents of her communications were transmitted to and used by Meta, or that she received targeted advertising *as a result of* that transmittal. Plaintiff simply contends "that Defendant read and used the content of Plaintiff's and Class Members' communications for purposes of creating advertising audiences" (Opp. at 12, citing Comp. ¶ 41), but that Complaint allegation fails to establish that Meta received, let alone used or accessed, actual contents of Plaintiff's communications. Plaintiff's allegation is speculative at best, and otherwise fails to state a Clause Four-aiding and abetting claim premised on a violation of Clause Three. The CIPA claim should be dismissed.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

## IV. CONCLUSION

Because amendment would be futile, Sono Bello respectfully asks the Court to grant its Motion to Dismiss the Complaint in its entirety and with prejudice.

Dated Friday, February 28, 2025.

*s/ Alexander Vitruk*
Alexander Vitruk, WSBA No. 57337
Logan F. Peppin, WSBA No. 55704
**BAKER & HOSTETLER LLP**
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
T: (206) 332-1380
E-mails: avitruk@bakerlaw.com
lpeppin@bakerllaw.com

Paul G. Karlsgodt, WSBA No. 40311
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
T: (303) 861-0600
E-mail: pkarlsgodt@bakerlaw.com

*Attorneys for Defendant*

*I certify that this document contains 3,901 words, in compliance with the Local Civil Rules.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via USDC Western Washington ECF Notice and/or E-Mail upon the following:

Wright A. Noel
**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Tel: (425) 837-4717
Fax: (425) 837-5396
E-mail: wright@carsonnoel.com

Sarah N. Westcot
Stephen A. Beck
**BURSOR & FISHER, P.A.**
701 Brickell Avenue, Suite 2100
Miami, Florida 33131
Tel: (305) 330-5512
Fax: (305) 679-9006
E-mails: swestcot@bursor.com
sbeck@bursor.com

*Attorneys for Plaintiff and the Putative Class*

DATED Friday, February 28, 2025 at Seattle, Washington.

*s/ Cheryl A. Phillips*
Cheryl Phillips, Legal Assistant