THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

T.S. individually and on behalf of all other similarly situated,,

Plaintiff,

v.

BODY CONTOUR CENTERS, LLC d/b/a SONO BELLA, a Delaware limited liability company,

Defendant.

CASE NO. 2:24-cv-01944-LK

**~~[MODEL]~~ AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ~~[PROPOSED]~~ ORDER**

The parties hereby stipulate to the following provisions ("ESI Protocol") regarding the discovery of electronically stored information ("ESI") in this matter (the "Action"):

**A. General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B. ESI Disclosures**

The parties agree that they shall continue to take reasonable steps to preserve potentially relevant documents and ESI, including Metadata identified in **Appendix A**, in accordance with their obligations under the Federal Rules of Civil Procedure and other applicable laws. Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Action. Specifically, the parties will meet and confer in good faith to identify:

1. Custodians. The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. The parties will meet and confer to establish the appropriate number of custodians to be disclosed based on the complexity, proportionality and nature of the case. Disputes should promptly be submitted to the Court for resolution.

2. Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C. ESI Discovery Procedures**

1. On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

i. The producing party shall disclose the custodial and non-custodial data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate and cull ESI likely to contain responsive and discoverable information. The producing party will provide hit counts for each search query, as necessary to evaluate the query by the receiving party.

ii. A party using a search methodology will disclose to the requesting party the search terms, keywords, date limitations, and custodians it proposes to use to identify

responsive documents and ESI. After disclosure, the parties will engage in a meet and confer process regarding such terms, custodians, and date culling, and any terms or term modifications sought by requesting party.

iii. The requesting party may ask the producing party to provide hit reports in the course of search-term negotiations. The hit report shall contain the following with respect to each search term in the proposal (a) the number of documents with hits for that term; (b) the number of unique documents for each term, i.e., documents which do not have hits for any other term; and (c) the number of document hits plus family members in connection with all documents with hits.

iv. The requesting party may make requests for different or additional search terms, and the producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query. The parties will meet and confer to resolve disagreements over the search terms, their efficacy, or their application. If the parties reach impasse after having met and conferred, either Party may thereafter submit the dispute to the Court or its designee for resolution.

c. Upon reasonable request, and as needed, a party shall disclose information relating to network design, the types of databases, and database dictionaries.

3. Format.

a. ESI will be produced as single-page, black and white, Group IV TIFF images using at least 300 DPI. To the extent possible through an automated process, the document's original orientation should be maintained (i.e., portrait-to-portrait and landscape-to-landscape). In the event the original orientation of documents in a production appears to be altered (e.g., emails are inverted or sideways) the receiving party may request the reproduction of those

documents in their original orientation. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheets, database data, and drawing files, will be produced in native format.

c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e. Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

i. Text Delimiter AKA "Quote" – "þ", Hex (FE), Unicode (U+00FE), Decimal (254) 2;

ii. Field Separator AKA "Comma" – "", Hex (14), ASCII character 20 ("¶");

iii. Unicode (U+0014), Decimal (20);

iv. Quote: ASCII character 254 ("þ"); and

v. New Line: ASCII character 174 ("®").

All rows will contain the same number of delimiters and fields. The multi-value field delimiter must be consistent across all fields. For example, if the CC field contains semi-colons between Email addresses, the Tag field should also contain semi-colons. Concordance-compatible image and data load files should be provided in a "Data" folder. Parties have the option to exchange sample load files. The Receiving Party will have 14 days to respond with Load File change requests if this exchange occurs. Nothing in this ESI Protocol will limit the parties from discussing Load File changes throughout the course of the Action.

f. The full text of each electronic document shall be extracted ("Extracted Text") directly from the native file and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension). Text files should be provided in a "Text" folder. To the extent that a document is redacted, the document should undergo OCR after the text has been redacted to remove the redacted text.

4. De-duplication. The parties will de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party. Removal of duplicate documents shall only be done on either (1) exact duplicate documents based on MD5 hash values across custodians or (2) emails that contain the same content, sender, and recipients as other messages despite not having matching MD5 hash values such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or an equivalent designation in an alternative document review platform. However, family relationships will be maintained and only exact email family groups, including email duplicate spare messages or equivalents, will be de-duplicated. No email attachment will be de-duplicated against a loose file.

Global de-duplication across the entire collection will be employed. The custodian field will list each custodian, separated by a semicolon, who was a source of that document, or alternatively the duplicate custodian information removed during the de-duplication process shall be tracked in a duplicate/other custodian field in the database load file.

5. Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Under no circumstances will email thread suppression eliminate (a) the ability of a Requesting Party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "All Custodians" field included in the data load file. The Receiving Party reserves the right to reasonably request lesser included for good cause shown.

6. Metadata fields. If the requesting party seeks metadata, the parties agree that the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

7. Hard-Copy Documents. If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that

indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e. Back-up data that are duplicative of data that are more accessible elsewhere.

f. Server, system or network logs.

g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E. Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after delivering a production.

2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). A party seeking to claw back Privileged Material shall follow the procedures outlined in **Appendix A.** The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

DATED: September 17, 2026

*s/ Alexander Vitruk*
Alexander Vitruk, WSBA No. 57337
Logan F. Peppin, WSBA No. 55704
**BAKER & HOSTETLER LLP**
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Phone: (206) 332-1380
E-mails: avitruk@bakerlaw.com
lpeppin@bakerlaw.com

Paul G. Karlsgodt, WSBA No. 40311
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Tel: (303) 861-0600
Fax: (303) 861-7805
E-mail: pkarlsgodt@bakerlaw.com

*Attorneys for Defendant*

*s/ Wright Noel*
Wright A. Noel

Wright A. Noel
**CARSON NOEL PLLC**
20 Sixth Avenue NE
Issaquah, WA 98027
Phone: (425) 837-4717
E-mail: wright@carsonnoel.com

Sarah N. Westcot
Stephen A. Beck
**BURSOR & FISHER, P.A.**
701 Brickell Avenue, Suite 2100
Miami, Florida 33131
Phone: (305) 330-5512
E-mails: swestcot@bursor.com
sbeck@bursor.com

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

The Court enters the parties' proposed order relating to their agreement on discovery of electronically stored information.

DATED: September 22, 2026

The Honorable Lauren King
UNITED STATES DISTRICT JUDGE

## APPENDIX A – CLAWBACK PROCEDURES

Any party who has received a notification of disclosure of Privileged Material from a producing shall follow the following procedure to ensure all copies of Privileged Material are appropriately returned, sequestered, or destroyed from the receiving party's system:

i. Locate each recall document in the document review/production database and return, sequester, or destroy the record from the database;

ii. If there is a native file link to the recalled document, return, sequester, or destroy the native file from the network path;

iii. If the database has an image load file, locate the document image(s) loaded into the viewing software and return, sequester, or destroy the image file(s) corresponding to the recalled documents. Remove the line(s) corresponding to the document image(s) from the image load file;

iv. Apply the same process to any additional copies of the document or database, where possible;

v. Locate and return, sequester, or destroy all other copies of the document, whether in electronic or hardcopy form. To the extent that copies of the document are contained on write-protected media, such as CDs or DVDs, these media shall be returned, sequestered, or destroyed and rendered unusable, with the exception of production media received from the recalling party, which shall be treated as described herein;

vi. If the document was produced in a write-protected format, the party seeking to recall the document shall, at its election, either (i) provide a replacement copy of the relevant production from which the document has been removed, in which case the receiving party shall destroy and render unusable the original production media; or (ii) allow the receiving party to retain the original

production media, in which case the receiving party shall take steps to ensure that the recalled document will not be used; and

vii. Confirm that the recall of Privileged Material under this procedure is complete by way of letter to the Party seeking to recall Privileged Material.