UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T.S.,<br><br>Plaintiff,<br><br>v.<br><br>BODY CONTOUR CENTERS, LLC d/b/a SONO BELLO,<br><br>Defendant. | CASE NO. 2:24-cv-01944-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

This matter comes before the Court on Defendant Body Contours Centers, LLC d/b/a/ Sono Bello's Motion to Dismiss under Rule 12(b)(6). Dkt. No. 17. Plaintiff T.S. opposes the motion. Dkt. No. 18. For the reasons set forth below, the Court dismisses T.S.'s claims under the California Confidentiality of Medical Information Act ("CMIA") and the California Invasion of Privacy Act ("CIPA"), but denies Sono Bello's motion to dismiss her Electronic Communications Privacy Act ("ECPA") claim.

## I. BACKGROUND

Sono Bello markets itself as a leading provider of cosmetic surgery, operating clinics that "offer[] various medical weight loss treatments, including laser liposuction, micro-laser liposuction, cellulite reduction procedures, and excess skin removal surgeries." Dkt. No. 1 at 1–2. All of its services are provided by "trained medical professionals." *Id.* at 2.

Sono Bello maintains a website that allows consumers to book appointments online. *Id.* In or around October 2023, T.S. booked an appointment on Sono Bello's website for a consultation for a surgical weight loss procedure. *Id.* at 3. She contends that when she did so, Sono Bello transmitted her online activity to Facebook—also known as Meta—through the Facebook Tracking Pixel. *Id.* at 14. Specifically, she contends that Facebook uses "Business Tools"—bits of code—"that advertisers can integrate into their websites, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms." *Id.* at 12. One such tool, the Facebook Tracking Pixel, causes an individual's browser "to secretly duplicate the communication with Defendant, transmitting it to Facebook's servers, alongside additional information that transcribed the communication's content and the individual's identity," including their Facebook ID, which is a unique identifier. *Id.* at 13–14; *see also id.* at 15.

T.S. contends that she never gave Sono Bello or Facebook permission to disclose her personal health information ("PHI"). *Id.* at 17. She was never notified in writing that Sono Bello disclosed such information, *id.*, and she did not consent to Facebook intercepting her data and monetizing it through targeted advertising, *id.* at 19.

T.S., who resides in California, brings this putative class action on behalf of "all California residents who have accessed and used [Sono Bello's] Website to book a consultation with [Sono Bello]." *Id.* at 2. She seeks statutory damages and an order requiring Sono Bello to cease the

challenged conduct and declaring that this conduct violates ECPA, 18 U.S.C. § 2511(1); CIPA, Cal. Penal Code § 631; and the CMIA, Cal. Civ. Code § 56.10. *Id.* at 3, 30.

## II. DISCUSSION

### A. Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1331 based on T.S.'s assertion of an ECPA claim. Dkt. No. 1 at 4. The Court has supplemental jurisdiction over her California law claims because these claims are so related to the ECPA claim that they form part of the same case or controversy. 28 U.S.C. § 1367(a).

### B. Legal Standard

Rule 12(b)(6) provides for dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under this standard, the Court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and asks whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not, however, accept as true legal conclusions or "formulaic recitations of the elements of a cause of action." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**C. Plaintiff's CMIA Claim**

Sono Bello moves to dismiss T.S.'s CMIA claim because, among other reasons, T.S. is not a "patient" under that statute. Dkt. No. 17 at 20. T.S. withdraws this claim in her response, Dkt. No. 18 at 8 n.1, and the Court therefore grants Sono Bello's motion to dismiss this claim.

**D. Plaintiff's ECPA Claim**

Section 2520 of ECPA provides a private right of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a). Here, T.S. alleges that Sono Bello violated subsections (1)(a) (interception), (1)(c) (disclosure), and (1)(d) (use) of Section 2511, which apply to "any person who":

> (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; . . .
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; [or]
>
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection[.]

18 U.S.C. § 2511(1)(a), (c)–(d).

To state a claim under ECPA, a plaintiff must show that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (quoting *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015)), *rev'd in part on other grounds sub nom. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). Sono

Bello argues that T.S. "cannot satisfy at least the second, third, or fourth elements," so dismissal is required. Dkt. No. 17 at 10.

1. T.S. Has Sufficiently Alleged the Disclosure of "Contents"

Sono Bello argues that T.S. has not sufficiently alleged any plausible interception of "contents." Dkt. No. 17 at 14. It contends that she "has not pled facts showing that the 'contents' of any communications were disclosed to Meta or any other third party." *Id.* T.S. counters that Sono Bello "disclose[d], through the Facebook Tracking Pixel, the precise weight loss procedures its patients are seeking consultations for." Dkt. No. 18 at 13 (citing Dkt. No. 1 at 13–14; emphasis omitted).

ECPA defines "contents" of a communication to include "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "[S]ubstance, purport, or meaning" are not defined in the statute, but after reviewing the statutory language and the statute as a whole, the Ninth Circuit concluded that "contents" means "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014). In contrast, "contents" does not include "record" information regarding the characteristics of the message that is generated in the course of the communication, such as the name, address, and subscriber number or identity of a subscriber or customer. *Id.* Thus, courts must consider whether the intercepted information is "information *about* a user's communication, or "the communication itself." *Id.* at 1107 (emphasis added). For example, because users' Facebook IDs are information about their communication but not the communication itself, they do not constitute "contents." *Id.* at 1107.

Here, T.S. alleges that Sono Bello transmitted more than her Facebook ID and browsing activity on public webpages on the Sono Bello site; she also contends that Sono Bello disclosed

her request for a consultation about a specific surgical procedure as well as the same information for other users. *See* Dkt. No. 1 at 3, 13–14. She provides an illustrative example of the kinds of information captured by the Tracking Pixel:




Dkt. No. 1 at 14 (yellow highlighting added). This information constitutes "the communication itself"—i.e., T.S.'s inquiry to Sono Bello regarding a specific medical service—and its disclosure is analogous to divulging "a user's request to a search engine for specific information" to a third party. *In re Zynga Priv. Litig.*, 750 F.3d at 1107, 1108–09. Accordingly, T.S.'s contentions suffice to plausibly allege that Sono Bello disclosed the "contents" of communications. *See Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 893–94 (S.D. Cal. 2025) (plaintiff's assertion that defendant disclosed her "searches for prescription medications for herself, her infant, and her

elderly father" plausibly alleged that defendant intercepted the "contents" of a communication); *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097, *4 (W.D. Wash. Mar. 4, 2025) ("The collection and transmission of information from unauthenticated web pages (i.e., pages that do not require a user to log in to access the website) may be actionable . . . if the information disclosed demonstrates that the plaintiff's interactions plausibly relate to the provision of healthcare[.]"); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their PHI."); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 926 (D. Minn. 2024) (finding allegation that "substantive information, including details about medical appointments, conditions, and treatments, was obtained via the Pixel" sufficient to plead that "contents" were disclosed).

2. The One-Party Consent Exception does not Defeat T.S.'s ECPA Claim

Sono Bello argues that T.S. cannot state an ECPA claim due to the statute's one-party consent exception, which provides that "[i]t shall not be unlawful under this chapter for a person . . . to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). There is no dispute that Sono Bello was "the intended recipient" of T.S's transmissions, and "the intended recipient of a communication is necessarily one of its parties." *In re Google*, 806 F.3d at 143. Furthermore, section 2511(2)(d)—which also applies "where one of the parties to the communication has given prior consent to such interception," 18 U.S.C. § 2511(2)(d)—immunizes Sono Bello for procuring third-party interceptions unless T.S. has adequately pleaded that her communication was "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

To trigger the crime-tort exception and survive a motion to dismiss, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (emphasis added); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d at 145. That is, to invoke the crime-tort exception, T.S. must allege that Sono Bello acted with a "criminal or tortious purpose [that is] separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *see also Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467 (9th Cir. 1997) (noting that the exception applies only if the defendant made the recording "for the purpose of committing any criminal or tortious act" (quoting 18 U.S.C. § 2511(2)(d)). "Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (citation modified) (holding that "where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [the crime-tort exception] applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere"). The crime-tort exception still applies where there are two motivations for an interception—one lawful and the other not. *Id.* ("[T]he existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose.").

Sono Bello contends that the crime-tort exception is inapplicable because T.S.'s claim "is tethered to the alleged transmission of browsing activities on the Sono Bello public website and not any other independent tortious or criminal act." Dkt. No. 17 at 12. T.S. alleges that Sono Bello chose to embed the Facebook Tracking Pixel on its website, thereby intentionally "assist[ing] Facebook in intercepting Plaintiff's and Class Members' electronic communications through the

Facebook Tracking Pixel, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' private and confidential information to third parties, such as Facebook." Dkt. No. 1 at 23–24; *see also id.* at 14. T.S. alleges that in so doing, Sono Bello "intended to violate various tort and criminal laws through the interception of Plaintiff's communications, including HIPAA's criminal prohibitions against disclosing 'individually identifiable health information' without authorization." Dkt. No. 18 at 8 (quoting Dkt. No. 1 at 24–25). Specifically, T.S. alleges that Sono Bello intentionally violated 42 U.S.C. § 1320d-6(a)(3), Dkt. No. 1 at 24, a provision of HIPAA that imposes a criminal penalty for knowingly "disclos[ing] individually identifiable health information to another person," 42 U.S.C. § 1320d-6(a)(3). T.S. also alleges that Sono Bello's disclosure of her "sensitive and confidential information and search results" for a specific surgical procedure was made in conjunction with disclosure of her Facebook ID, which is "easily tied" to her full name. Dkt. No. 18 at 10 (citing Dkt. No. 1 at 15); Dkt. No. 1 at 14–15.[1]

In other words, at the time Sono Bello purposefully installed the Facebook Tracking Pixel to *intercept* T.S.'s communications, it did so with the purpose of *disclosing* T.S.'s individually identifiable health information ("IIHI") to Meta to allow advertisers (including Sono Bello and others) to make targeted outreach to Facebook users such as T.S. *See* Dkt. No. 1 at 11–13 (explaining that the Facebook Tracking Pixel enables advertisers on Facebook to build Lookalike Audiences—i.e., audiences that "leverage information such as demographics, interests, and behavior from [an advertiser's] source audience to find new people who share similar qualities" (citation modified)). "Courts have widely recognized that an intention to violate Section 1320d-6(a) is an 'independent or secondary act' that can trigger the crime-tort exception." *Adair v. Cigna Corp. Servs.*, LLC, No. CV-25-2384, 2026 WL 2160444, at *10 (E.D. Pa. July 27, 2026); *see also*

[1] To use Meta's social networking site, users must register and provide their real names, email addresses, gender, and birth dates; upon registration, Meta "assigns each user a unique Facebook User ID." *In re Zynga Privacy Litig.*, 750 F.3d at 1101.

*Hartley v. Univ. of Chicago Med. Ctr.*, No. 22-CV-5891, 2025 WL 2802317, at *9 (N.D. Ill. Oct. 1, 2025) ("[C]ourts in this district and nationwide have held that '[a] disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA.'" (quoting *Stein v. Edward-Elmhurst Health*, Case No. 23-cv-14515, 2025 WL 580556, at *4–5 (N.D. Ill. Feb. 21, 2025) (collecting cases))).[2] T.S.'s allegations suffice to invoke the crime-tort exception because it is "[t]he disclosure, not the interception itself, [that] is the secondary act that supports the crime-tort exception." *Doe v. Deaconess Illinois Union Cnty. Hosp., Inc.*, 831 F. Supp. 3d 710, 725 (S.D. Ill. 2025)[3]; *see also Smart v. Main Line Health*, No. CV 22-5239, 2026 WL 1008171, at *3 (E.D.

---

[2] *See also, e.g.*, *Adair*, 2026 WL 2160444, at *11 (holding that the crime-tort exception applied where plaintiffs plausibly alleged that defendants disclosed their identifiable health information to third parties by knowingly and deliberately deploying the pixel technologies on their site); *McClain v. Capital Vision Servs., LLC*, No. 1:25-cv-07675, 2026 WL 710926, at *4 (N.D. Ill. Mar. 13, 2026) ("the weight of authority . . . nationwide holds that a disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA" (citation modified)); *Ramirez v. LasikMD USA, Inc.*, No. 24-cv-2221-CAB-DDL, 2026 WL 194855, at *3 (S.D. Cal. Jan. 26, 2026); *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552, at *5 (D. Ariz. Jan. 28, 2025) (finding that plaintiffs' allegations that defendant used pixels to capture IIHI and "packaged it with cookies created by Facebook to transmit both the medical information and identifying information to Facebook" was sufficient to plead that defendant "received and disclosed IIHI" and "intercepted the communications for the purpose of violating HIPAA"); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380–82 (S.D.N.Y. 2024) (applying the crime-tort exception where plaintiffs alleged a New York-area health system "knowingly and deliberately," "to improve its marketing," added tracking pixels to its website that disclosed patient PHI to third parties); *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) ("[A]lleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception."); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (allegation that defendant installed the Facebook Tracking Pixel and the Facebook Conversions Application Programming Interface on its website and sent Facebook individually identifiable information that plaintiffs had entered into defendant's website in violation of HIPAA established "intent on [defendant's] part to commit tortious or unlawful conduct at the time of interception as required to state an ECPA claim, making the application of the criminal or tortious conduct exception applicable"); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *3 (N.D. Ill. 2024 Sept. 9, 2024) (plaintiffs' allegations that defendant "placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA]" plausibly alleged that defendant "intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception"); *Mekhail*, 726 F. Supp. 3d at 928 (allegation that the Pixel allowed Meta to access plaintiffs' private health data in violation of state law and HIPAA "sufficiently plead an interception made with the purpose of violating one or more laws, independent from the act of interception itself").

[3] As the court notes in *Deaconess*, and as Sono Bello suggests, Dkt. No. 17 at 8–9, allegations that a defendant who provides medical services disclosed inquiries submitted on its website "are far from a sure thing in terms of their ability to fit within HIPAA's definition of IIHI because they do not claim that [the defendant] disclosed a condition that [the *plaintiff*] suffered from." *Deaconess*, 831 F. Supp. 3d at 723. For example, the inquiries the plaintiff submitted were "not necessarily related to her; they could concern another person entirely." *Id.* But on balance, as in *Deaconess*, "the Court finds that a faithful application of the plausibility standard, with all inferences drawn in [the plaintiff's] favor, compels a finding that she sufficiently alleged the improper disclosure of her IIHI." *Id.* It is at least plausible that by causing T.S.'s information to be intercepted and disclosing such information to Meta, Sono Bello shared

Pa. Apr. 14, 2026) ("After the Meta Collection Tools captured the contents of user communications, Main Line Health shared that information to allow marketers and advertisers to make targeted outreach to users. Just because those acts happen at nearly the same time does not mean the act is singular."); *I.T. v. ChoicePoint LLC*, C25-00193-KKE, 2025 WL 2495079, at *8 (W.D. Wash. Aug. 29, 2025) (noting that "an intent to disclose or use private information in violation of HIPAA is distinct from the interception of the private information").

Thus, the one-party consent exception does not defeat T.S.'s ECPA claim.

3. Liability for Procuring

Sono Bello also argues that T.S.'s ECPA claim should be dismissed because there is no liability "for procuring, enabling, aiding or abetting another's interception" under the statute. Dkt. No. 17 at 14. According to Sono Bello, T.S.'s ECPA claim is premised on allegations that Meta—not Sono Bello—intercepted her communications through its source code on Sono Bello's website, but ECPA's "plain, unambiguous language creates a private civil cause of action only against the person who engages in an unlawful interception, disclosure, or intentional use of wire, oral or electronic communication—not against any other person for procuring, enabling, aiding or abetting another's interception of such." *Id.* at 13–14 (citing 18 U.S.C. § 2520(a)); *see also* Dkt. No. 19 at 8. T.S. counters that she is not bringing her claim against Sono Bello under an aiding and abetting theory. Dkt. No. 18 at 11. Rather, she is alleging that Sono Bello directly violated the statute when it "shared its patients' online activity," including information about surgical weight loss procedures. *Id.* at 10–11 (citing Dkt. No. 1 at 14–15, 23, 25).

---

information that "related" to her health. 42 U.S.C. § 1320d(6) (defining IIHI to include "any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and—(i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.").

Courts are divided as to whether ECPA provides for civil liability when a party procures third parties to intercept communications. 18 U.S.C. § 2511(1) states:

> Except as otherwise specifically provided in this chapter any person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

This provision establishes criminal penalties for (1) intercepting wire, oral, or electronic communications; (2) endeavoring to intercept wire, oral, or electronic communications; and (3) procuring another person to intercept wire, oral, or electronic communications. Section 2511 does not provide private civil causes of action or civil remedies; rather, those rights are provided in section 2520 of ECPA. Before ECPA was amended in 1986, section 2520(a) read:

> Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person.

Now, 18 U.S.C. § 2520(a) provides:

> any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

Language prohibiting the procurement of interception remained in the unamended underlying criminal statute.

In *Peavy v. WFAA–TV, Inc.*, the Fifth Circuit analyzed the text of the statute and concluded that the 1986 amendment was intended to remove a civil cause of action against one who "procures" another to intercept communications. 221 F.3d 158, 168–69 (5th Cir. 2000). Some courts have followed *Peavy* and limited "procurement" liability to criminal defendants. *See, e.g., Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012); *Lyons v. Liberty Univ., Inc.*, No. 6:26-CV-00007, 2026 WL 2167846, at *5 (W.D. Va. July 28, 2026); *In re Blue Shield of*

*California Priv. Litig.*, No. 4:25-CV-03209-YGR, 2026 WL 2040561, at *7 (N.D. Cal. July 10, 2026); *Council on Am.-Islamic Rels. Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 23–24 (D.D.C. 2012).

However, other courts have concluded that the 1986 amendment to section 2520(a) does not support limiting civil liability for procurers. *See, e.g.*, *Dawson v. Univ. of Phoenix, Inc.*, No. 1:25-CV-03497, 2026 WL 92248, at *13–14 (N.D. Ill. Jan. 13, 2026); *Boseovski v. McCloud Healthcare Clinic, Inc.*, No. 2:16-CV-2491-DMC, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020); *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 412 n.3 (N.D. Ill. 2012); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 428 (E.D.N.Y. 2006). This Court agrees. The amendment replaced "shall (1) have a civil cause of action against any person who *intercepts, discloses, or uses or procures any other person to intercept, disclose, or use such communications*, and (2) be entitled to recover from any such person" with "may in a civil action recover from the person or entity, other than the United States, which *engaged in that violation* such relief as may be appropriate." The language of both the prior version and the current version of section 2520(a) answers two questions, but the answers do not indicate any narrowing of the persons against whom civil actions may be filed:

| | |
|---|---|
| **Prior version** | |
| Who can recover in a civil action? | "Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter" |
| Against whom? | "[A]ny person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use such communications" |
| **Current version** | |
| Who can recover in a civil action? | "Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter" (changes highlighted) |
| Against whom? | "[T]he person or entity, other than the United States, which engaged in that violation" |

As the Court in *Dawson* reasoned,

> Section 2520(a) permits that the person whose communications were intercepted, disclosed, or used in violation of the ECPA may recover from the person or entity that engaged in that violation. And under § 2511(1)(a), persons whose communications are intercepted include those persons whose communications were intercepted by a third-party who was procured to do so by a defendant. Both the persons directly intercepting the communications and the persons who procured interception have violated the ECPA. It follows that the victim of the wiretap may sue any person or entity who engaged in the violation, including procuring interception.

2026 WL 92248, at *14; *see also Lonegan*, 436 F. Supp. 2d at 428 (similar). Furthermore, if Congress intended to exclude procurers from liability in the amended version of section 2620(a), its carveout for section 2511(2)(a)(ii) would be mere surplusage. Section 2511(2)(a)(ii) states that "providers of wire or electronic communication service . . . are authorized to provide information, facilities, or technical assistance to persons authorized by law to intercept wire, oral, or electronic communications" under certain circumstances. If section 2620(a) only included direct interception, there would be no need for the carveout for section 2511(2)(a)(ii). While the canon against surplusage is not an iron rule, it "can be meaningful when a competing interpretation would avoid superfluity," *Bufkin v. Collins*, 604 U.S. 369, 387 (2025), and here, the interpretation of "that violation" to include "violation[s] of this chapter"—regardless of whether the interception, disclosure, or use was direct or procured—avoids superfluity.

Legislative history also supports the Court's interpretation of the meaning of the current version of section 2620(a). Its 1986 amendment was part of the passage of ECPA. Specifically, the Electronic Communication Privacy Act of 1986 amended Title III of the Omnibus Crime Control and Safe Street Act of 1968 "to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." S. Rep. No. 99–541 at 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555. A summary of the legislation described the amendment to section 2520 as "[a]mend[ing] the Federal criminal code to extend the

prohibition against the unauthorized interception of communications to include specific types of *electronic* communications. (Present law prohibits the interception of wire and oral communications only.).” Summary of H.R. 4952 as of 10/1/1986 (emphasis added), *available at* https://www.congress.gov/bill/99th-congress/house-bill/4952. The Senate Report further stated that the proposed legislation would amend section 2520 “to incorporate violations *involving* interception, disclosure or intentional use of wire, oral, or electronic communications.” S. Rep. No. 99–541 at 26, *reprinted in* 1986 U.S.C.C.A.N. 3555, 3580 (emphasis added). The Senate Report goes on to explain: “Proposed subsection 2520(a) of title 18 authorizes the commencement of a civil suit. *There is one exception*. A civil action will not lie where the requirements of section 2511(2)(a)(ii) of title 18 are met.” *Id.* (emphasis added). Essentially, the only substantive changes to section 2520 made by the 1986 amendment were (1) the inclusion of electronic communications and (2) the exception for interception assistance from providers of wire or electronic communication service. Importantly, other than that “one exception,” Congress did not express any intention to narrow the range of violations for which defendants could be held civilly liable.

Even if ECPA excluded “procuring” liability in civil cases (it does not), T.S. also alleges that Sono Bello itself improperly intentionally used and disclosed her data. 18 U.S.C. § 2511(1)(c)–(d). Specifically, the complaint alleges that Sono Bello did so “[b]y utilizing and embedding the Facebook Tracking Pixel on its Website.” Dkt. No. 1 at 23; *see also id.* at 14–15 (“Through the Facebook Tracking Pixel, Defendant shared its patients’ online activity, including their sensitive and confidential information and search results” and their PII, including their Facebook ID). Sono Bello contends that it could not have intercepted T.S.’s data under the ECPA’s one-party consent framework, Dkt. No. 19 at 8, but as set forth above, T.S. has sufficiently alleged that the crime-tort exception applies.

Sono Bello also relies on *In re Toys R Us, Inc., Privacy Litigation*, where the court found that section 2520(a) "does not provide a cause of action against aiders and abetters, and, accordingly, that plaintiffs may not proceed against Toys R Us on such theory." No. 00-CV-2746, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001); *see also* Dkt. No. 17 at 14. However, in that case, the complaint did not allege "that Toys R Us itself disclosed or used any electronic communications intercepted by Coremetrics, knowing or having reason to know that those communications had been intercepted in violation of the Wiretap Act." *In re Toys R Us, Inc., Privacy Litig.*, 2001 WL 34517252, at *7. Again, here, T.S. alleges that Sono Bello intentionally embedded the Facebook Tracking Pixel on its site to intercept her communications with the purpose of disclosing her IIHI for advertisers' use in targeted advertising. Dkt. No. 1 at 23–25; *see also id.* at 11–13 (explaining that the Facebook Tracking Pixel enables advertisers on Facebook to build Lookalike Audiences—i.e., audiences that "leverage information such as demographics, interests, and behavior from [an advertiser's] source audience to find new people who share similar qualities," and would allow Sono Bello to build Custom Audiences—i.e., "people who have already shown interest in [its] business, whether they're loyal customers or people who have used [its] app or visited [its] website" (citation modified)). Thus, T.S.'s allegations are sufficient to state a claim under an intentional use or disclosure theory. 18 U.S.C. § 2511(1)(c)–(d); *see Strong*, 2025 WL 317552, at *5 (finding that plaintiffs sufficiently pleaded defendant received and disclosed IIHI where "[t]he complaint alleges the Pixel deployed by [defendant] captured information received by [defendant] and then packaged it with cookies created by Facebook to transmit both the medical information and identifying information to Facebook"). The Court therefore denies Sono Bello's motion to dismiss T.S.'s ECPA claim.

**E. Plaintiff's CIPA Claim**

T.S. alleges that Sono Bello violated section 631(a) of CIPA because it "aided, agreed with, and conspired with Facebook to track and intercept [T.S.]'s and Class Members' internet communications while accessing the Website" without their consent. Dkt. No. 1 at 26. Section 631 imposes liability on any person

> who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system [("Clause One)"], or
>
> who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state [("Clause Two")]; or
>
> who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained [("Clause Three")], or
>
> who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section [("Clause Four").]

Cal. Penal Code § 631(a) (additional spacing between clauses added for readability). The statute thus details "three distinct and mutually independent patterns of conduct: intentional wiretapping [under Clause One], wilfully attempting to learn the contents or meaning of a communication in transit over a wire [under Clause Two], and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities [under Clause Three]," *Tavernetti v. Superior Ct.*, 583 P.2d 737, 741 (Cal. 1978), and additionally imposes liability on those who aid or abet others in engaging in these activities under Clause Four, Cal. Penal Code § 631(a).

Sono Bello argues that T.S. premises her claim on Clause Four, but her claim fails because she does not allege a predicate violation of one of the other clauses by Meta. Dkt. No. 17 at 16. It

contends that T.S. "cannot assert a predicate violation of Clause One because it does not apply to internet connections," and instead only applies to telegraphs and telephones. *Id.* at 16–17; *see also* Dkt. No. 19 at 8–9. Further, Sono Bello argues that she has not established a predicate violation of Clause Two or Clause Three because "she fails to allege sufficient facts showing (a) any interception of 'contents' of communications while they are 'in transit,' as required by Clause Two, or (b) Meta used or attempted to use Plaintiff's information, which is required to state a predicate violation of Clause Three." Dkt. No. 17 at 16–17. T.S. does not dispute that her Clause Four claim requires a predicate violation of one of the other clauses, but contends that she has stated a claim under all three other clauses. Dkt. No. 18 at 13–17.

"A federal court interpreting a state statute follows that state's rules of statutory construction." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1132 (N.D. Cal. 2015). The Court thus first sets forth California's principles of statutory construction, then considers each clause in light of those principles.

1. Statutory Construction of CIPA

The California Supreme Court articulated California's principles of statutory construction in a recent CIPA case:

> When we interpret a statute, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.

*Smith v. LoanMe, Inc.*, 483 P.3d 869, 872 (Cal. 2021) (citation modified). Against the backdrop of

the California Legislature's finding that the invasion of privacy caused by "the development of new devices and techniques for the purpose of eavesdropping upon private communications" has "created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society," the California Legislature passed CIPA. Cal. Penal Code § 630. CIPA's purpose was "to protect the right of privacy of the people" of California, *id.*, and some courts have held that CIPA should be interpreted broadly to protect consumers' privacy. *See, e.g.*, *Flanagan v. Flanagan*, 41 P.3d 575, 581 (Cal. 2002); *see also Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 WL 4539577, at *4 (N.D. Cal. Oct. 21, 2024); *Gladstone v. Amazon Web Servs.*, 739 F. Supp. 3d 846, 852 (W.D. Wash. 2024).

2. <u>Clause One</u>

Clause One imposes liability on "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, . . . with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system[.]" Cal. Penal Code § 631(a).

The parties dispute whether Clause One applies to newer technologies, including the Facebook Tracking Pixel. Dkt. No. 17 at 16–17; Dkt. No. 18 at 13–14; Dkt. No. 19 at 8–9. As the parties note, the California Supreme Court has not addressed whether Clause One applies to internet communications, and district courts have reached different conclusions on that issue. *Compare, e.g.*, *Kauffman v. Papa John's Int'l, Inc.*, No. 22-cv-1492-L-MSB, 2024 WL 171363, at *8 (S.D. Cal. Jan. 12, 2024) (finding that Clause One applies to internet communications), *with Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023) (holding that Clause One applies "only to communications over telephones and not through the internet").

In the absence of binding authority from the California Supreme Court, the Court must predict how that court would rule if confronted with this issue. *PSM Holding Corp. v. Nat'l Farm*

*Fin. Corp.*, 884 F.3d 812, 820 (9th Cir. 2018). T.S. notes that the "California Supreme Court . . . regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." Dkt. No. 18 at 14 (quoting *Matera v. Google, Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016)). In addition, as noted above, courts have held that CIPA should be interpreted broadly to protect consumers' privacy. *See, e.g.*, *Flanagan*, 41 P.3d at 581. At the same time, the Court must interpret the statute according to its text. *United States v. Vance Crooked Arm*, 788 F.3d 1065, 1073 (9th Cir. 2015); *see also Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020) (California law of statutory interpretation "begins with the words themselves . . . because the words of a legal text generally provide the most reliable indicator of [legislative] intent" (citation modified)).

The text of Clause One provides liability for "any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any *telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system[.]" Cal. Penal Code § 631(a) (emphasis added). "Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet." *Licea*, 659 F. Supp. 3d at 1104 (collecting cases); *see also Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102-DMS(KSC), 2024 WL 559241, at *2 (S.D. Cal Feb. 12, 2024) (holding that "clause one does not apply to internet connections"); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756 (N.D. Cal. 2023) (finding that "the statute—by its plain terms—does not apply to technologies other than telegraphs and telephones"). This interpretation is consistent with the plain language of Clause One, "which refers to specific technology": "telegraph or telephone." *Licea*, 659 F. Supp. 3d at 1105. In contrast, the California legislature chose to word Clause Two more broadly. *See, e.g.*, *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022)

(analyzing Clause Two and noting that it "applies to Internet communications");[4] *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) (contrasting Clause One with Clause Two and finding "no reason to conclude that the limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause of the statute should be imported to the second clause of the statute"; noting that the language difference "suggests that the Legislature intended the two clauses to apply to different types of communications"). The Legislature's intent is further highlighted by the fact that it "has had an opportunity to amend section 631(a) to take into account privacy issues raised by new technologies like internet messaging" but despite amending the law "many times since it was enacted," it has chosen not to expand Clause One's protections. *Licea*, 659 F. Supp. 3d at 1105–06. As Judge Bybee explained in a recent concurrence,

> [S]martphones are mini-computers capable of accessing the internet, something the California legislature had never heard of (or could have imagined) in 1967. For this reason, simply sending a message on an iPhone (and through an internet browser) does not automatically implicate § 631(a). Instead, the statute, as passed in 1967, focuses on the wiretapping of telegraph or telephone wires—it criminalizes, as relevant here, the wiretapping of a telephone call. *See Flanagan v. Flanagan*, 41 P.3d 575, 577 (Cal. 2002) (CIPA "was enacted in 1967, replacing prior laws that permitted the recording of *telephone conversations* with the consent of one party to the conversation. The purpose of the act was to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their *conversation*.") (emphasis added).
>
> If the California legislature wanted to apply § 631(a) to the internet, it could do so by amending that provision or adding to CIPA's statutory scheme.

*Gutierrez v. Converse, Inc.*, No. 24-4797, 2025 WL 1895315, at *2–3 (9th Cir. 2025) (Bybee, J., concurring) (footnote omitted).

The Court thus concludes that T.S. has not stated a claim for violation of Clause One.

[4] *Kauffman* read the Ninth Circuit's reasoning in *Javier* to apply to both Clause One and Clause Two, *Kauffman*, 2024 WL 171363, at *8, but the *Javier* court only analyzed Clause Two, *Javier*, 2022 WL 1744107, at *1. *Gutierrez v. Converse Inc.*, CV 23-6547-KK-MARx, 2024 WL 3511648, at *6 (C.D. Cal. July 12, 2024) (noting that *Javier* did not address Clause One).

3. Clause Two

Clause Two imposes liability on one "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within" California. Cal. Penal Code § 631(a).

Sono Bello contends that T.S. has not alleged a predicate violation of Clause Two because "she fails to allege sufficient facts showing . . . any interception of 'contents' of communications while they are 'in transit,' as required by Clause Two[.]" Dkt. No. 17 at 16–17. T.S. responds that her protected health information constitutes "contents" and that Meta's Tracking Pixel intercepted these communications with Sono Bello's website in real time, that is, while they were in transit. Dkt. No. 18 at 14–16.

To plead the "in transit" element, "the allegations must show that the third party listens to a communication '*while* the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.'" *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1124–25 (C.D. Cal. 2024) (quoting *Valenzuela*, 674 F. Supp. 3d at 755). "This 'real time' standard mirrors the similar 'in transit' requirement under the federal Wiretap Act, which courts routinely rely upon to consider CIPA claims." *Id.* at 1125. As part of the real time requirement, "Section 631 does not prohibit a party to a conversation from recording the conversation with a device and *later* sharing the recording with a third party." *Valenzuela v. Nationwide Mut Ins. Co.*, 686 F. Supp. 3d 969, 976 (C.D. Cal. 2023) ("[A] third party listening in on communications *at the time they are received* via a device is a violation of Section 631.").

The complaint alleges that Sono Bello's website "hosted code for the Facebook Tracking Pixel," Dkt. No. 1 at 4, and describes how Facebook's Tracking Pixel works as follows:

> When a user accesses a website hosting the Facebook Tracking Pixel, Facebook's software script surreptitiously directs the user's browser to contemporaneously send a separate message to Facebook's servers. This second secret and contemporaneous transmission contains the original GET request sent to the host website, along with additional data that the Facebook Tracking Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website. At relevant times, two sets of code were thus automatically run as part of the browser's attempt to load and read https://sonobello.com—Defendant's own code and Facebook's embedded code.

*Id.* at 13. Thus, when an individual like T.S. requests a consultation on Sono Bello's website, the tracking software "contemporaneous[ly]" transmits "the original GET request" to Facebook. *Id.*

Sono Bello contends that T.S. does not allege "real time interceptions," Dkt. No. 19 at 11, and this appears true. T.S argues that she need only "demonstrate a party intercepted the communication during its transmission, rather than once it was placed in electronic storage." Dkt. No. 18 at 16 (quoting *Heiting*, 728 F. Supp. 3d at 1125). But this argument is not supported by existing case law, which requires more than an allegation of interception and later review. *See, e.g.*, *Valenzuela*, 686 F. Supp. 3d at 978 (finding sufficient an allegation that defendant aided a third party in intercepting her chat messages on defendant's website in real time); *Lewis v. Magnite, Inc.*, No. 2:25-CV-03448-MWC-SSCX, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025) (holding that CIPA's in transit provision requires more than intercepting and storing data); *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117–18 (N.D. Cal. 2025) (same). Furthermore, as the court in *Eating Recovery Center* emphasized,

> There is an even more important reason to avoid reading the second clause of Section 631(a)—and, for that matter, any portion of CIPA—too broadly: it is a criminal statute. Even though most CIPA cases are private civil actions, the interpretations courts adopt while adjudicating those actions could affect the extent to which people or companies are subject to criminal liability. . . .
>
> Indeed, there is reason to question whether the Legislature intended for CIPA to apply to the type of conduct implicated by this case at all. Recall that CIPA was enacted in 1967. Its language—with words like "read" and "intercept" and "in transit"—is ill-suited for application to internet communications. The Legislature has never, in over four decades, amended Section 631 to adapt its language to the

> digital age. And California has since adopted other statutes that more clearly speak to the practice of data sharing. *See* Cal. Civil Code § 1798.100 *et seq.* (California Consumer Privacy Act). To be sure, as Doe notes, CIPA was intended to protect Californians' privacy rights in the face of "the development of new devices and techniques for the purpose of eavesdropping upon private communications." Cal. Penal Code § 630. But using a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping. Did the Legislature really intend to subject companies like [defendant] to criminal liability for using third-party software to track website activity? Did it really mean to criminalize the use of web traffic data? Given the statute's ambiguity and its imposition of criminal liability, perhaps courts should not be so quick to assume that the answer is yes. But regardless of whether CIPA could, in some circumstances, impose criminal liability on website operators and data analytics firms for the transmission of information about web traffic and the subsequent use of that information, it would not be appropriate to interpret the "in-transit" requirement of Section 631(a) so broadly as to cover the conduct at issue here.

806 F. Supp. 3d at 1118–19 (footnote omitted).

Because T.S. does not allege that Meta reviewed her communications while they were "in transit," she has not stated a violation of Clause Two.

4. Clause Three

Sono Bello contends that T.S. has not alleged a predicate violation of Clause Three because "she fails to allege sufficient facts showing . . . [that] Meta used or attempted to use Plaintiff's information, which is required to state a predicate violation of Clause Three." Dkt. No. 17 at 16–17.

For T.S. to state a viable claim under Clause Three, "she must have sufficiently alleged a claim under the second clause of Section 631(a) because a violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or second clause of § 631(a)." *Heiting*, 728 F. Supp. 3d at 1123 (citation modified). As set forth above, T.S. has not sufficiently alleged a violation of Clause One or Two. Accordingly, her Clause Three claim fails as well.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Sono Bello's motion to dismiss. Dkt. No. 17. The Court dismisses T.S.'s CMIA and CIPA claims, but denies the motion with respect to her ECPA claim.

Dated this 29th day of September, 2026.

Lauren King
United States District Judge